**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| VOICE DOMAIN TECHNOLOGIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. CIV-08-701-HE |
| | ) | |
| v. | ) | |
| | ) | |
| PHILIPS ELECTRONICS NORTH AMERICA | ) | |
| CORPORATION, OLYMPUS AMERICA INC., | ) | |
| and OLYMPUS IMAGING AMERICA INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S RESPONSIVE BRIEF IN SUPPORT
OF ITS CLAIM CONSTRUCTION**

Henry A. Meyer, III
MEYER, CAVE & LEONARD PLLC
Suite 207
116 East Sheridan Avenue
Oklahoma City, OK 73104
(405) 702-9900

Alan M. Fisch
KAYE SCHOLER LLP
901 Fifteenth Street N.W.
Washington, DC 20005-2327
(202) 682-3500

Richard G. Greco
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8500

*Attorneys for Voice Domain Technologies
LLC*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES................................................................................................ii

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT .................................................................................................................. 1

I.      THE PRESUMPTION AGAINST MEANS-PLUS-FUNCTION
        INTERPRETATION HAS NOT BEEN OVERCOME BY DEFENDANT ..................... 1

II.     IN COMPUTER AND ELECTRONIC TERMINOLOGY, A "CONTROLLER"
        IS RECOGNIZED AS A STRUCTURE .......................................................... 3

III.    THE POSITION TRANSDUCER AND CURSOR POSITION TRANSDUCER ........... 7

IV.     THE VOICE COMMAND BUTTON AND THE VOICE DATA BUTTON .................. 9

V.      MICROPHONE INTERPRETATION MECHANISM IN THE '883 PATENT ............. 13

VI.     THE COUPLING MECHANISM LINKING THE MICROPHONE AND
        BUTTONS TO THE COMPUTER SYSTEM ................................................. 16

VII.    SPEECH RECOGNITION IN THE '883 PATENT........................................ 17

# TABLE OF AUTHORITIES

## CASES

*Apex, Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003) ......................1, 3, 6, 12, 13

*Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed. App. 697 (Fed. Cir. 2008) ................14, 17

*Bayer AG v. Biovail Corp.*, 279 F.3d 1340 (Fed. Cir. 2002) ........................................................10

*Biomedino LLC v. Water Technologies Corp.*, 490 F.3d 946 (Fed. Cir. 2007) ..............................5

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002).......................................3, 8

*Clinical Innovations, LLC v. Utah Medical Products, Inc.*, 2007 WL 2688246
   (D. Utah 2007) ..............................................................................................................................8

*Depuy Spine Inc. v. Medtronic Sofamor Danek Inc.*, 469 F.3d 1005 (Fed. Cir. 2006).................14

*Diagnostic Group LLC v. Benson Medical Instruments Co.*, 2005 WL 715935
   (D. Minn. 2005), cited by Philips ................................................................................................5

*Greenberg v. Ethicon Endo Surgery, Inc.*, 91 F.3d 1580 (Fed. Cir. 1996).......................1, 2, 8, 14

*Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241 (Fed. Cir. 2005).....................................................16

*Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004)...............1, 2, 8

*Linear Tech Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004)...............................14

*MIT v. Abacus Software*, 462 F.3d 1344 (Fed. Cir. 2006)............................................................14

*NTP v. Research in Motion*, 418 F.3d 1282 (Fed. Cir. 2005)..................................................10, 11

*Personalized Media Communications, LLC v. International Trade Comm'n*,
   161 F.3d 696 (Fed. Cir. 1998).....................................................................................3, 6, 9, 17

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..............................................7, 10, 11, 15

*Renishaw PLC v. Marposs Socoeta per Azioni*, 159 F.3d 1242 (Fed. Cir. 1998)........................10

*Toro Co. v. Deere & Co.*, 355 F.3d 1313 (Fed. Cir. 2004)............................................................4

*WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339 (fed. Cir. 1999) ......................................15

# STATUTES

35 U.S.C § 112(6) ....................................................................................................................1

## PRELIMINARY STATEMENT

Plaintiff, Voice Domain Technologies, LLC, submits this brief in response to defendant Philips' brief regarding claim construction.

## ARGUMENT

### I.    THE PRESUMPTION AGAINST MEANS-PLUS-FUNCTION INTERPRETATION HAS NOT BEEN OVERCOME BY DEFENDANT

The drafter of patent claims may choose the form of his claims. The Patent Act provides the option of what is now known as a means-plus-function claim in section 112 paragraph 6:

> An the element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C § 112(6).

As the Federal Circuit has held, the question of whether a claim element is in means-plus-function format is "ordinarily not a difficult one," because "claim drafters conventionally use the preface 'means for' (or 'step for') when they intend to invoke section 112(6) . . .". *See Greenberg v. Ethicon Endo Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996).

There is a strong presumption that a claim element is *not* drafted as a "means-plus-function" element when the statutory language "means for" is not used in defining the claim element. That presumption is not easily overcome. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004)("Our cases make clear, however, that the presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome.").

Where the claim element does not employ the term "means," the burden of proof by a preponderance of evidence rests on the party asserting that the claim element is a means-plus-function element. *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1372 (Fed. Cir. 2003).

Defendant barely pays lip service to this strong presumption that the disputed claim elements are not means-plus-function elements, and offers no evidence to carry its burden of proof to overcome the presumption. Rather, it relies on cases construing different terms in the context of different technologies rather than evidence demonstrating that the terms in issue would not be understood by a person of ordinary skill as referring to structure.

Defendant also tries to rebut the presumption against a means-plus-function construction by arguing that the claim terms use functional language.  That is not adequate to rebut the presumption. As the Federal Circuit has noted in *Greenberg,* 91 F.3d at 1583, a great many structures are known by terms which are functional in nature:

> [T]he fact that a particular mechanism - here 'detent mechanism' - is defined in functional terms is not sufficient to convert a claim element containing that term into a 'means for performing a specified function' within the meaning of section 112(6).  Many devices take their names from the functions they perform.  The examples are innumerable, such as 'filter,' 'brake,' 'clamp,' 'screwdriver,' or 'lock.'  Indeed, several of the devices at issue in this case have names that describe their functions, such as 'graspers,' 'cutters,' and 'suture applicators.'

*See also Lighting World*, 382 F.3d at 1360.

Defendant also tries to rebut the presumption by arguing that some of the disputed claim terms can cover a number of different structures rather than a particular structure, but that argument is not relevant to the question of whether the disputed claim terms reference structure. The Federal Circuit has repeatedly rejected the argument that a claim element should be construed as a means-plus-function element if it encompasses many structures and not one specific structure.  *Lighting World*, 382 F.3d at 1359 ("we have not required the claim term to denote a specific structure. Instead, we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their

function."); *Personalized Media Communications, LLC v. International Trade Comm'n*, 161 F.3d 696, 705 (Fed. Cir. 1998)("[N]either the fact that a 'detector' is defined in terms of its function, nor the fact that the term 'detector' does not connote a precise physical structure in the minds of those of skill in the art detracts from the definiteness of the structure"); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir. 2002), holding that the claim term "reciprocating member" on an exercise machine was not in means-plus-function format, and stating that a term "need not connote a precise physical structure in order to avoid the ambit of [§ 112 ¶6]."

The presumption against a means-plus-function construction has not been rebutted. To the contrary, the evidence and case law establish that plaintiff's constructions are correct.

## II.    IN COMPUTER AND ELECTRONIC TERMINOLOGY, A "CONTROLLER" IS RECOGNIZED AS A STRUCTURE

The word controller appears in Claim 1 of the '566 patent in the context of an "output port controller." The output port controller is a structure shown on the circuit diagram of the device, and is a common computer term referencing a known structure that is described in dictionaries and technical publications. *See* Ex. 18, U.S. Patent No. 4,674,083 (*e.g.* col. 6, line 10- 51 describing input and output port controllers. Controllers also shown in diagrams); Ex. 19, 4,680,753 (describing programmable controllers); and Ex. 20, 4,965,788 (col. 1, line 65: "plurality of input port controllers"; (col. 2. line 38) multiple paths between "each pair of input/output controllers"). These patents use the terms controller, including port controllers (input and output) in patent specifications and drawings of circuits, recognizing them as structures that need no further explanation. Controllers in the context of computers are things -- structures -- not merely names for functions without the suggestion of a structure.

As the Federal Circuit has held in *Apex Inc.*, 325 F.3d at 1372:

> To help determine whether a claim term recites sufficient structure we examine whether it has an understood meaning in the art. As an aid in making this determination, this court inquires into whether the 'term, as the name for a structure, has a reasonably well understood meaning in the art,' keeping in mind that a claim term 'need not call to mind a single well-defined structure.' (internal citations omitted).

Here, the term "output port controller" refers to a known structure as shown by technical dictionaries, publications and patents.

Defendant has failed to carry its burden of proof to establish that the "output port controller" element is a means-plus-function element, and indeed, it has come forward with no evidence at all that the term would be understood by one of ordinary skill in the relevant art as referring only to a function with no suggestion of structure. Instead, defendant merely cites cases using some form of the word "control" as a verb, in the context of completely unrelated technologies, *e.g.*, mechanical devices that disrupt soil, none of which shed light on how the term "controller" or "output port controller" are understood in the computer related arts.

Defendant cites *Toro Co. v. Deere & Co.*, 355 F.3d 1313 (Fed. Cir. 2004), arguing that terms similar to "controller" were construed as means-plus-function claims. (Def. Br. p. 19). That case is widely off point. First, the term at issue in *Toro* was not similar to "controller," but was a "control mechanism for controlling the operations of said valve." Second, the technology in that case related to a machine for lifting and fracturing soil. The control mechanism element stated:

> control mechanism for controlling the operation of said valve and the movement of said frame over the turf to be treated such that the valve periodically releases high-pressure jets of generally incompressible liquid from the output of the nozzles at an output pressure commensurate with the speed of the frame over the turf and the spacing of said nozzles so that said jets of liquid penetrate through the turf into the soil such that the dispersion pattern from the output of each nozzle in the soil generally co-acts with the dispersion pattern of the adjacent nozzles so as to lift and fracture the soil and reduce the general turf and turf subsoil density. *Id.* at 1325.

The term "control mechanism" in that patent was not referring to the name of a known structure in the soil tilling art, and no one contended that it was. The Federal Circuit's construction of the term "control mechanism for controlling the operation of said valve" in an art involving soil disruption has no relevance to how the term "output port controller" is used and understood in the computer and electronic arts. Moreover, another claim in the patent in *Toro* used the phrase "control means" for a similar element, invoking a presumption of means-plus-function.

*Diagnostic Group LLC v. Benson Medical Instruments Co.*, 2005 WL 715935 (D. Minn. 2005), cited by Philips (Def. Br. p. 19), does not support its argument that "controller" in the context of computers is merely a functional term. There, the claims were written using the "means-for" language, and the presumption, accordingly, was that the claim elements were drafted in means-plus-function format[1]. Moreover, the term at issue in *Diagnostic Group* was not "controller," but rather "means for controlling the means for switching, the means for controlling being communicatingly connected with the means for switching" in connection with an audiometer for testing hearing. The court applied the presumption that the "means" language invoked a "means-plus-function" construction.

Philips' reliance on *Biomedino, LLC v. Water Technologies Corp.*, 490 F.3d 946 (Fed. Cir. 2007) is similarly misplaced. The claim element at issue in that case was written in means-plus-function format: "a control means for automatically operating said valving." The claim

---

[1]    One, of course, can deliberately write any claim element in means-plus-function format, even if the claim could also be written in standard format. *See* M.P.E.P. 2181. A screwdriver could be written as a "means for turning a screw" and thereby invoke means-plus-function construction. Here, the patents were not written in that format and the claim language uses terms shown in the patent specification and other technical literature to reference structures.

element was therefore presumptively in the means-plus-function form.  The technology involved a device using fluids to separate molecules, not electronics or computers, and the construction of "a control means" for operating valves in that chemical art has no relevance to the question of whether "controller" refers to a structure in the computer art.

Defendant has come forward with no evidence to suggest that the disputed terms lack an understood meaning in the art.  To the contrary, the technical dictionaries and texts, and patents in the field, including circuit diagrams identifying controllers, demonstrate that the claim term "controller" has a recognized meaning in the art.

Philips' argument that the "output port controller" is not a structure because it cannot perform the function of transmitting the content of the memory of the device to the voice processing computer any faster than the information is sent by the controller is baseless.  (Def. Br. p. 20).  Like any single component, the output port controller works in connection with the other components of the device to perform its function -- *i.e.*  an interface between the memory of the device and the voice processing computer to which it is connected.  That has no bearing on whether output port controller refers to structure. For example, in *Personalized Media Communications, LLC v. ITC*, 161 F.3d 696 (Fed. Cir. 1998), the "digital detector" could not function without other structures that input digital signals, but it was nonetheless a structure and was not construed as a means-plus-function element.  Similarly, in *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364 (Fed. Cir. 2003), an "interface circuit" was held to be a structure, not means-plus-function element, even though the circuit interfaced between other structures in the same way that the output port controller must.

The term controller is also used in the claims of the '800 patent to refer to structure.  The '800 patent device contains a controller that operates in both a local mode and portable mode.

The controller is shown in the '800 patent diagram as a physical structure consisting of the CPU and memory, and the specification of the patent makes clear that the term has that structural meaning. That intrinsic evidence from the specification has the highest value in claim construction, *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(*en banc*), and is consistent with the above-referenced texts and patents using the term controller.

**III.    THE POSITION TRANSDUCER AND CURSOR POSITION TRANSDUCER**

The claim element in the '800 patent referring to the "position transducer" and the claim element in the '883 patent referring to the cursor position transducer do not use the term "means" and are presumptively not in the means-plus-function format. Defendant has the burden of proof to establish the contrary, but it has come forward with no evidence.

Transducer, as shown in plaintiff's opening brief, is a well-known electrical term found in texts, dictionaries and patents. (*See* Plts. Br. pp. 11-13). The patent specification also explains what a transducer is by giving examples of transducers, including "buttons," "electromechanical switches," "membrane switches," "track ball" or "joystick." (Ex. 2, '800 patent, col. 2, lines 18-31). The "position transducer" and the "cursor position transducers" are structures -- transducers -- that convert user input (moving a track ball or pulling on a switch) to electric signals.

Furthermore, the specification incorporates by reference the related '220 patent (Ex. 23), which uses a multi-position "switch" **20** to perform the function of the claimed "position transducer" (Ex. 23, '220 patent, col. 2, lines 38 – 48; col. 5, lines 12 – 16). Thus, the '800 patent also discloses a switch structure for implementing the function of the position transducer. Similarly, the '883 patent specifically mentions that "other types of transducers can be used to manipulate the cursor," thereby teaching that transducers other than those specifically named can be used. (Ex. 3, '883 patent, col. 2, lines 36 – 38).

Defendant cites no authority that suggests "transducer" is merely a function in this context. It offers no evidence to meet its burden of proof, but once again relies on a case construing different terms in patent claims concerning very different technology. Defendant cites *Clinical Innovations, LLC v. Utah Medical Products, Inc.*, 2007 WL 2688246 (D. Utah 2007), a district court case where the Court construed the terms "pressure detecting device" and "structure for detecting pressure" in a patent concerning a catheter for measuring intrauterine pressure. That case has no bearing on how persons of ordinary skill in the art understand the term "transducer" in electrical arts.

Moreover, defendant contends that "transducer fails to suggest any definite form of structure." (Def. Br. p. 24). However, the law does not require that a structural term relate to one specific structure. It is adequate "even if the term covers a broad class of structures and even if the term identifies the structures by their functions." *Lighting World*, 382 F.3d at 1359-1360; *CCS Fitness, Inc.*, 288 F.3d at 1369. In fact, the key distinction between standard claim drafting and means-plus-function drafting is that a standard term referring to a structure is construed to cover anything that would fall within the claim term definition and not necessarily a single type of structure. A means-plus-function element, however, is limited to only those specific structures identified in the patent specification and their equivalents.

Defendant argues that "transducer" "connotes the function of transducing." (Def. Br. p. 24). The word "switch" -- one kind of transducer -- "connotes the function of switching," but that does not make it any less of a structure. Transducer is a thing -- you can hold it in your hand -- not a function. Moreover, that a claim term is expressed in functional language does not make it a means-plus-function element. *Greenberg v. Ethicon Endo Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996); *Lighting World*, 382 F.3d at 1359-1360 (construing "connector assembly" as a

standard, and not a means-plus-function element); *Personalized Media*, 161 F.3d at 704 ("digital detector" was a structural reference even though defined in terms of its function).

The presumption that the transducer claim elements are not in means-plus-function format has not been overcome.

## IV.    THE VOICE COMMAND BUTTON AND THE VOICE DATA BUTTON

Claim 1 of '883 patent describes a system that accepts voice input via a handheld microphone unit  (the "handheld peripheral").  The system includes two buttons that are used to distinguish between two types of voice input: (1) dictation (the "data") and (2) verbal instructions (the "commands").   The user designates the intended type of voice input by operating a pair of buttons on the handheld unit while speaking into the microphone.  When the user wants his speech to be included in his dictation, for example, the text of a letter he is dictating, he asserts the voice data button.  (Ex. 3, '883 patent col. 2, lines 50-60).  When the user wants to give a command or instruction that is not to be included in the text of the document he is dictating, for example, "use Times New Roman type font," he asserts the voice command button.  (Ex. 3, '883 patent, col. 3 line 60; col. 4. line 11).  As Voice Domain explained during prosecution, the claimed input device thereby "allow[s] the user to rapidly change between commands and data input without any ambiguity as to how the voice should be interpreted." (Ex. 17, V00338, Appeal Brief, page 3).

As is plain from the context of the claim, specification and prosecution history, the terms "voice data button" and "voice command button" are the names used to identify the buttons that perform the notification functions recited in the claim.  Philips, in its claim interpretation, irrationally removes the phrase "voice data" and "voice command" from the context of referring to buttons on the device.  It does this to improperly add limitations to the claim respecting the operation of the device.

The voice command button and voice data button distinguish microphone input intended as a command from microphone input intended to be "data" – *i.e.*, the content of dictation.  How the commands are executed, whether by the computer alone or a transcriber, is not specified by Claim 1.  Yet, Philips' construction seeks to add a limitation to the claim requiring the system to automatically execute verbal commands via speech recognition.  To support its theory, Philips cites examples in the specification wherein speech recognition was used to automatically implement verbal commands.  However, since no claim language states how a command must be executed, Philips' proposal would read a limitation from the specification into the claims in violation of a fundamental cannon of claim construction:

> Our case law requires a textual 'hook' in the claim language for a limitation of this nature to be imposed. Generally, 'a party wishing to use statements in the written description to confine or otherwise affect a patent's scope must, at the very least, point to a term or terms in the claim with which to draw in those statements. Without any claim term that is susceptible of clarification by the written description, there is no legitimate way to narrow the property right.'  In other words, 'there must be a textual reference in the actual language of the claim with which to associate a proffered claim construction.'

*NTP, Inc. v. Research In Motion*, 418 F.3d 1282, 1310 (Fed Cir. 2005) (*citing Renishaw PLC v. Marposs Socoeta per Azioni*, 159 F.3d 1242, 1248 (Fed. Cir. 1998)); *see also Phillips v. AWH Corp.,* 415 F.3d 1303, 1323 (Fed Cir 2005)("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."); *Bayer AG v. Biovail Corp.*, 279 F3d 1340, 1348 (Fed. Cir. 2002)("While a court may look to the specification and prosecution history to interpret what a patentee meant by a word or phrase in a claim, extraneous limitations cannot be read into the claims from the specification or prosecution history.")

Philips also cites to excerpts from the file history to support its theory.   However, these excerpts explicitly state that they are describing an "example embodiment" wherein the claimed

command button was used with a system capable of implementing spoken commands.  In the

first cited excerpt, Voice Domain states that the "advantage" of the voice command button is

demonstrated by an "exemplary embodiment" wherein a word processing system is "capable of

implementing spoken commands."  Similarly, the second excerpt also discusses an "example"

wherein the claimed device was used  "with processing systems having a speech recognition

mechanism."  (Ex. 17, V00338, Appeal Brief, page 3).  These descriptions of  "example

embodiment[s]" of the claimed invention clearly do not amount to a "clear disavowal" of claim

scope as required to limit the scope of the claims based on disclaimers allegedly made during the

course of prosecution.  *NTP, Inc.*, 418 F.3d at 1308 ("The required words or expressions of

manifest exclusion or restriction representing a clear disavowal of claim scope are not present in

these passages from the prosecution history.").

Moreover, the Philips construction is inconsistent with the claim differentiation

construction principle.  Dependent Claim 2 of the '883 patent has a limitation requiring that the

system include "speech recognition," but independent Claim 1 does not have a speech

recognition limitation.  Philips' construction would read into Claim 1 a requirement for a speech

recognition mechanism in the computer that could understand verbal commands, and thus would

render Claim 2 superfluous, contrary to the claim differentiation principle of claim construction.

As the Federal Circuit ruled in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)(*en banc)*,

the claim language itself provides substantial guidance to the meaning of the claim terms.  It

stated the principle of claim differentiation observing: "the presence of a dependent claim that

adds a particular limitation gives rise to a presumption that the limitation in question is not

present in the independent claim."  *Id*. at 1315.

Philips makes the error of improperly fragmenting the claim by attempting to construe the phrase fragments "voice command" and "voice data" in isolation of the complete phrase "voice command *button*" and "voice data *button*."  This fragmented construction, which essentially ignores the fact that the terms refer to buttons on the device, results in incoherence when the Philips' construction is read in context of the claim language.

For example, in Claim 1 of the '883 patent, the limitation is "a voice command button for providing a command notification signal indicating whether said voice command button is asserted."  If Philips' definition of "voice command" is substituted for the words "voice command" in the claim, the resulting element would read *"speech that triggers a computer to execute an operation specified by the contents of the speech"* button for providing a command notification signal indicating whether said *"speech that triggers a computer to execute an operation specified by the contents of the speech"* button is asserted.  Under Philips' construction,  the word "button" and the term "command notification signal" are reduced to orphans with no role to play in the phrase.

The Federal Circuit has cautioned against such fragmenting of phrases in claim construction in *Apex Inc. v. Raritan Computer, Inc*., 325 F.3d 1364, 1372 (Fed. Cir. 2003), where it commented on a district court's erroneous construction of claim elements as means-plus-function elements, stating: "the primary source of this error lies in the district court's reliance on single words of the limitations, *e.g.*, 'circuit,' as opposed to the limitations as a whole *e.g.*, 'a first interface circuit for receiving keyboard and cursor control device signals from the workstation.'"

In addition, Philips' construction conflicts with the specification's description of how the device operates.  Philips construction suggests that the content of the speech determines whether

it will be treated as a command, without reference to whether the voice command button is asserted. To the contrary, as the specification makes clear, when one asserts the "voice command button," the device treats the microphone input as a command, regardless of the content of the speech. (Ex. 3, '883 patent, col. 3 line 60; col. 4. line 11). The term "voice command button" clearly describes a structure -- a button -- and is not describing the speech.

Philips' construction of the term "voice data button" suffers from the same defect in construing the term "voice data" in isolation from the button it describes. Once again, it is not the content of the speech that triggers the recording of this microphone input into text, as Philips' construction provides, but rather the assertion of the voice data button.

The same arguments apply to the analogous terms of the '800 patent -- "command button" in Claim 6 and "record button" in Claim 7. Those terms also describe buttons on the peripheral, which signal whether the voice input is data, *e.g*., the text of a letter being dictated ("record button"), or a command that is not intended to be part of the dictated text, but rather is an instruction to be carried out ("command button"). The '800 patent claims also have no limitations regarding how a command is to be executed, and are not limited to speech recognition mechanisms.

## V.    MICROPHONE INTERPRETATION MECHANISM IN THE '883 PATENT

The term "microphone interpretation mechanism" appears as part of the element of Claim 1 of the '883 patent which provides for a "microphone interpretation mechanism which, in response to said command and data notification signals, determines when said microphone signal represents command and when it represents data." Because this claim limitation is not written with the "means for" language, the presumption is that it is not a means-plus-function claim element, and the burden of proving the contrary by a preponderance of the evidence rests on the defendant Philips. *See Apex Inc., supra*.

The defendant has come forward with no evidence to rebut the presumption, but instead relies on case law construing different terms in completely different areas of technology.

Philips cites *MIT v. Abacus Software*, 462 F.3d 1344 (Fed. Cir. 2006), construing the term "colorant selection mechanism" in a claim relating to a device for reproducing a color. It also relies on *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 288 Fed. App. 697 (Fed. Cir. 2008), where the court construed the term "two retaining mechanisms for supporting a pair of lenses" in a case involving eyeglasses. Neither case, nor the technology involved, have any bearing on the computer peripheral art of the '883 patent. The meaning of the terms "color selection mechanism" or "retaining mechanisms" in those contexts does not assist in the construction of the phrase in the computer art involved here. The particular context is critical to a construction, because as shown in *Greenberg, supra*, the word "mechanism" can denote structure depending on context. There, the term "dedent mechanism" was held to suggest structure and was not an element in means-plus-function format.

Contextual language can imply structure to one of skill in the art. *Linear Technology Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004). In *Linear*, the Court stated that "contextual language" that described the operation of a circuit, namely, "monitoring a signal from the output terminal" and "generating a first feedback signal" conveyed a type of circuit structure to those skilled in the art: "[P]ersons of ordinary skill in the art would understand the structural arrangements of circuit components from the term 'circuit' *coupled with the qualifying language* of claim 1." *Id.* at 1320 (emphasis added); *see also Depuy Spine Inc. v. Medtronic Sofamor Danek Inc.*, 469 F.3d 1005 (Fed Cir. 2006) (holding that claim language specifying that a "compression member" must fit in an opening and exert a force "implies structure."); and

*Philips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) (claim language characterizing a baffle as "extending inwardly" … "plainly implies that the baffles are structures.")

Here, the context of the entire phrase of the claim limitation implies that the microphone interpretation mechanism refers to a structure.  The claimed "microphone interpretation mechanism" is said to be a portion of a "processing system," such as a computer.  Furthermore, other contextual claim language indicates that microphone interpretation mechanism receives electric "notification" signals from the command and data buttons, and in response interprets the user's input.  This implies to one skilled in the art that the claimed mechanism refers to structures in a processing system that are responsive to electric signals generated by a user's input for interpreting that input.  For example, the '883 patent incorporates by reference U.S. Patent No. 5,036,539 (Ex. 24) which describes a processing system that receives a user's keyboard input.  The patent shows that the system includes known control programs that "interpret the operator's or user's terminal keyboard input."  (Ex. 24, '539 patent, col. 5, lines 64–67).  This indicates that those skilled in the art would understand that the claimed mechanism refers generally to the types of structures used in a processing system for interpreting user input, and in particular to the use of such structures to interpret user input in the manner recited in the claim.

The '883 patent specification further makes clear that the recognition mechanism is the computer processor by describing the recognition of other buttons on the device:

> The buttons **18-26** are connected to control switch buffer/amplifier circuitry **34** which produces electrical signals representative of whether the buttons are asserted.  The electrical signals are transmitted to the computer over cable **28** to notify the computer that one or more keys have been asserted.  (Ex. 3, '883 patent, col. 2, lines 38-44.)

Philips attempts to limit the structure- the computer processor- to a computer programmed with one particular type of software, and cites *WMS Gaming Inc. v. Int'l Game*

*Tech*., 184 F.3d 1339 (Fed. Cir. 1999) and *Harris Corp. v. Ericsson Inc*., 417 F.3d 1241 (Fed.

Cir. 2005), to indicate that an algorithm is a mandatory part of computer related means-plus-

function claims. Philips' reliance on these cases is misplaced. First, in both cases cited by

Philips, it was clear that the claims at issue were written in means-plus-function format. In this

case, Claim 1 of the '883 patent is not written in a means-plus-function format, as discussed

above.

Second, in the *WMS Gaming* and *Harris* cases, the parties agreed that an algorithm,

which was clearly disclosed in each respective specification, was part of the corresponding

structure. The issue was what specific algorithm should be deemed to limit the structure. In

contrast, the specification of the '883 patent does not disclose a particular algorithm, a program,

or software, because the structure of Claim 1- a computer processor for interpreting user input -

is a well known structure in electrical and computer arts which does not require instruction in the

claim language on how it operates. Here the microphone interpretation mechanism of Claim 1 of

the '883 patent refers to the use of a structure for recognizing when particular buttons are

asserted -- in this instance, the voice data button or the voice command button for purposes of

designating when the microphone input represents a command, and when it represents data.

There is nothing in the claim or specification that requires the element to be construed as

a means-plus-function element or to limit the disclosure to a particular type of circuitry. Philips

has not overcome the strong presumption that the claimed microphone interpretation mechanism

is not a means-plus-function element subject to the limits of §112 ¶ 6.

## VI.    THE COUPLING MECHANISM LINKING THE PERIPHERAL'S MICROPHONE AND BUTTONS TO THE COMPUTER SYSTEM

The phrase in Claim 1 of the '833 patent providing for "coupling mechanism for

providing said microphone signal, said command notification signal, said data notification signal,

and the cursor signal to said processing system" is again presumptively not a means-plus function element because it does not use the "means" language, and the burden of proof rests on defendant to prove the contrary.

The defendant comes forward with no evidence at all, but again tries to meet its burden of proof by citation to the claim construction of a different term in a case concerning eyeglasses, *Aspex Eyewear, supra*. That case, construing the term "two retaining mechanisms for supporting a pair of lenses and defining a frontal plane" provides no evidence that a person of ordinary skill in the computer and electrical arts would consider a "coupling" between a microphone or a cursor transducer to a processing system as a mere function, and not a structure. The patent specification discloses both wired and wireless connections of these electrical components to the processing system. (Ex. 3, '883 patent, col. 1, line 65 - col. 2, line 5). "Coupling mechanism" in this electrical context was an appropriate term to refer to any of these well-known modes of electrical connections to computers including both wired and wireless.

In the electrical arts, the term "coupling" has been used to refer to electrical connections. *See* Ex. 31, U.S. Patent No. 3,792,420 titled "Electrical Coupling Element."

## VII.    SPEECH RECOGNITION IN THE '883 PATENT

Philips argues that the term "speech recognition" is "inherently functional", and from that concludes that the claim element must be a means-plus-function claim. This again confuses a functional sounding name of a known structure with a function. As has been pointed out previously, many structures have functional names but are not thereby converted to means-plus-function elements. *Greenberg*; *Lighting World*; *Personalized Media supra*.

The speech recognition element of Claim 1 of the '883 patent does not use the word "means" and therefore, there is a presumption that the claim is not written in a means-plus-

function format.  The defendant Philips has the burden to overcome that presumption, but it has utterly failed to come forward with any evidence to that effect.

Speech recognition software is an old product.  A history of the development of speech recognition programs is published on the website of Dragon, a leading brand of voice or speech recognition software.  (*See* Ex. 22, www.dragon-medical-transcription.com /historyspeechrecognition.html).  That history describes the existence of speech recognition programs as far back as 1936, and the availability of commercial speech recognition software products as early as 1982.  When the '883 patent refers to the use of speech recognition, it is referring to the software structure of which there are known commercial versions.  The defendant Philips' construction tries to limit the speech recognition to the particular version that is referenced in the specification, although obviously any speech recognition program could be used in connection with the invention, and revisions and updates occur to such programs continually as with any other software.

By analogy, if a patent contained a claim to a computer keyboard that could be used with a "word processing mechanism" or word processing program, any ordinary computer user would know that there are, and have been, many such programs available.  It would make no sense to limit the scope of the keyboard invention to use with the particular version of Microsoft Word® that happened to be available when the patent was written.  The same is true of the known speech recognition programs, and there is no reason for construing this claim language to be frozen to a particular speech recognition program as it existed on the filing date of the patent.

The defendant has offered no evidence whatsoever that a person of ordinary skill in the art would believe the term "speech recognition mechanism" referred only to a function without any structure to perform it.  The evidence is to the contrary, that speech recognition programs

were well known and would be understood as a reference to these well-known software structures. One can purchase a speech recognition mechanism at a store that sells computer software.  It is a thing -- a structure -- not merely the description of the function.

"Speech recognition mechanism" is accordingly not a term that describes purely a function, but is the standard means of referring to known programs which run on computers.

Dated:  April 30, 2009

> Henry A. Meyer, III
> MEYER, CAVE & LEONARD PLLC
> Suite 207
> 116 East Sheridan Avenue
> Oklahoma City, OK 73104
> (405) 702-9900
>
> Alan M. Fisch
> KAYE SCHOLER LLP
> 901 Fifteenth Street N.W.
> Washington, DC 20005-2327
> (202) 682-3500
>
> Richard G. Greco
> KAYE SCHOLER LLP
> 425 Park Avenue
> New York, NY 10022
> (212) 836-8500
>
> By: /s/ Richard G. Greco
>
> *Attorneys for Voice Domain Technologies LLC*