# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| Voice Domain Technologies, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CIV-08-701-HE |
| | ) | |
| v. | ) | |
| | ) | |
| Philips Electronics North America Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT PHILIPS ELECTRONICS NORTH AMERICA CORPORATION'S RESPONSIVE CLAIM CONSTRUCTION BRIEF

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................... 1

II.     Applicable Principles of Claim Construction ......................................... 2

III.    The '566 Patent ....................................................................................... 2

        A.      Voice Domain's Proposed Construction of "Portable Voice
                Recording Device" (Claims 1 and 4) Conflicts with the Specification
                and Overlaps with Other Recitations in the Claims ...................... 2

        B.      Voice Domain's Construction of "Output Port Controller" (Claims 1
                and 4) Conflicts with the Intrinsic Record, Overlaps with Other
                Claim Language, and Relies on Incompetent Extrinsic Evidence ............... 4

        C.      Voice Domain's Construction of "Voice Processing Computer"
                (Claim 1) is both Unnecessary and Untenable ............................... 7

IV.     The '800 Patent ....................................................................................... 8

        A.      Voice Domain's Construction of "Portable Voice Storage
                Peripheral" (Claim 1) Lacks Support from the Specification and
                Conflicts with Other Claims ......................................................... 8

        B.      Voice Domain's Constructions of "Position Transducer" and
                "Position Signal" (Claim 1) Conflict with the Intrinsic Record .................. 9

        C.      Voice Domain's Construction of "Controller" (Claim 1) is
                Unsupported by the Intrinsic and Extrinsic Records ................................. 11

        D.      Voice Domain's Construction of "Remote Voice Processing
                System" (Claim 1) Finds No Support from the Specification .................... 12

        E.      Voice Domain's Constructions of "Command Button" and
                "Command Notification Signal" (Claims 6 and 8) Ignore the
                Intrinsic Record and Add New Claims Language Out of Whole
                Cloth ...................................................................................................... 13

        F.      Voice Domain's Constructions of "Record Button" and "Data
                Notification Signal" (Claims 5 and 7) are Redundant and
                Unnecessary .......................................................................................... 15

        G.      Voice Domain's Construction of "Spoken Commands (Claims 6
                and 8) Reads Out Claim Language and Disregards the Intrinsic
                Record ..................................................................................................... 15

V.    The '883 Patent ................................................................................ 16

    A.    Voice Domain's Construction of "Handheld Peripheral" (Claim 1) Contradicts the Specification .................................................. 16

    B.    Voice Domain's Construction of "Voice Command Button" (Claim 1) is Illogical and Contrary to the Intrinsic Record ...................... 17

    C.    Voice Domain's Construction of "Command Notification Signal" (Claim 1) is Redundant and Unnecessary ................................... 19

    D.    Voice Domain's Construction of "Voice Data Button" (Claim 1) is Unnecessary and Improperly Seeks to Reclaim Forfeited Claim Scope ........................................................................... 20

    E.    Voice Domain's Construction of "Data Notification Signal" (Claim 1) is Redundant and Unnecessary ................................... 20

    F.    Voice Domain's Construction of "Cursor Position Transducer" (Claim 1) is Unsupported by the Intrinsic Record ..................... 21

    G.    Voice Domain's Construction of "Coupling Mechanism for Providing Said Microphone Signal, Said Command Notification Signal, Said Data Notification Signal, and the Cursor Signal to Said Processing System" (Claim 1) Verifies that § 112, ¶ 6, Applies ............... 22

    H.    Voice Domain's Construction of "Microphone Interpretation Mechanism" (Claim 1) Supports Applying § 112, ¶ 6 ............... 23

    I.    Voice Domain's Construction of "Speech Recognition Mechanism" (Claim 2) Further Supports Applying § 112, ¶ 6 ....................... 24

VI.    CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*B. Braun Med. Inc. v. Abbott Labs.*,
    124 F.3d 1419 (Fed. Cir. 1997).............................................................................6

*Biomedino, LLC, v. Waters Techs. Corp.*,
    490 F.3d 946 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 653 (2007).................11

*Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*,
    334 F.3d 1294, 1299 (Fed. Cir. 2003)………………………………………..7

*Eli Lilly and Co. v. Teva Pharmaceuticals USA, Inc.*,
    2008 WL 2410420 (S.D. Ind. June 11, 2008).........................................................7

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
    535 U.S. 722 (2002)...............................................................................................19

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
    91 F.3d 1580 (Fed. Cir. 1996)..............................................................................23

*Halliburton Energy Servs., Inc. v. M-I LLC*,
    514 F.3d 1244 (Fed. Cir. 2008)...............................................................................3

*HEM, Inc. v. Behringer Saws, Inc.*,
    2002 WL 32355610 (N.D. Okla. July 23, 2002)……………………........…………….2

*Markman v. Westview Instruments, Inc.*,
    52 F.2d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996)…………….....2

*Mass. Inst. of Tech. v. Abacus Software*,
    462 F.3d 1344 (Fed. Cir. 2006)...........................................................................22

*Moba, B.V. v. Diamond Automation, Inc.*,
    325 F.3d 1306 (Fed. Cir. 2003), *cert. denied* 540 U.S. 982 (2003)..............…….7

*Pause Tech., LLC v. TiVo, Inc.*,
    419 F.3d 1326 (Fed. Cir. 2005)...........................................................................15

*Saunders Group, Inc. v. Comfortrac, Inc.*,
    492 F.3d 1326 (Fed. Cir. 2007)…...………………………………………….4, 9

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
  247 F.3d 1316 (Fed. Cir. 2001)…….........……......…………….…………….2, 13

*White v. Dunbar*,
  119 U.S. 47, 52 (1886)………………………………………………………….2

## Statutes

35 U.S.C. § 112 (2000) ...…………………………………………………….……..*passim*

I.    INTRODUCTION

Unhappy with its claims as written, Voice Domain seeks to redraft its patents during litigation.  In some instances Voice Domain's nineteen proposed constructions[1] import limitations from the specifications of the asserted patents, arbitrarily excluding embodiments.  In other instances the proposed constructions add broadening language to extend the claims to cover subject matter that is either beyond the scope of the patent disclosures or inconsistent with them.  Much of the language in Voice Domain's constructions is redundant of existing claim language and would confuse a jury.

Using the patent specification to construe claims is not an arbitrary process.  Voice Domain obtained allowance of some of its claims by defining claim elements according to the function they perform instead of reciting structure, in accordance with 35 U.S.C. § 112, ¶ 6 ("§ 112, ¶ 6").  Having done so, the statute requires the claim scope to be defined by the embodiments disclosed in the supporting specification.  The argument now offered by Voice Domain to extricate itself from the consequence of the claim drafting strategy it chose to obtain allowance is that § 112, ¶ 6, should now not apply because the patent specifications make clear what structure was intended to correspond to the claim terms.  This, however, is the very analysis that underlies § 112, ¶ 6.  If one skilled in the art must refer to the patent specification to understand what structure was

---

[1] For the Court's convenience, a chart showing both PENAC's and Voice Domain's proposed constructions is attached as Def.'s Exh. 16.  This chart also includes Voice Domain's proposed constructions from its March 31, 2009 Plaintiff's Statement of Claim Terms for Construction and Proposed Construction (Def.'s Exh. 17).

contemplated to perform the recited function, then § 112, ¶ 6, applies. Accordingly, Voice Domain's justification for opposing PENAC's constructions actually highlights the reason that PENAC's proposals are proper.

## II.    Applicable Principles of Claim Construction

Courts have long recognized that the purpose of a patent claim is to "mak[e] the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms." *White v. Dunbar*, 119 U.S. 47, 52 (1886). "[A] construction that flies in the face of the express language of the claim" (*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1324 (Fed. Cir. 2001) (citation omitted)), or that adds "extraneous limitation[s]" from the specification, is improper. *HEM, Inc. v. Behringer Saws, Inc.*, 2002 WL 32355610, *2 (N.D. Okla. July 23, 2002). After all, "it is only fair (and statutorily required) that competitors be able to ascertain to a reasonable degree the scope of the patentee's right to exclude." *Markman v. Westview Instruments, Inc.*, 52 F.2d 967, 978 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996) (citations omitted).

## III.    The '566 Patent

### A.    Voice Domain's Proposed Construction of "Portable Voice Recording Device" (Claims 1 and 4) Conflicts with the Specification and Overlaps with Other Recitations in the Claims

The term "portable voice recording device" would be readily understood by a lay jury and therefore needs no special construction. Moreover, Voice Domain's proposed construction of the term runs afoul of established principles of claim construction.

Voice Domain asserts that the term "portable voice recording device" should be construed to mean "a device that is capable of being carried by a user *while recording the user's voice*." Plaintiff's Memorandum in Support of Its Proposed Claim Construction 7 (emphasis added) ("Pl.'s Mem."). To support its construction, Voice Domain relies upon the embodiment of Fig. 1 and attempts to import its features into the claims. However, the description of this embodiment states that "*another aspect* [of] the invention includes . . . a chassis having a size and shape which allows the chassis to fit in a user's hand . . . ." Def.'s Exh. 2 at col. 1, ll. 48-51 (emphasis added).

Moreover, this embodiment is narrowly described as "hand held," rather than "portable," and the broader term "portable" is never used in the specification in such a way as to indicate that the term *requires* the device to be "capable of being carried by a user *while recording the user's voice*." In fact, the specification *explicitly* distinguishes the "*hand held*" device of Figures 1A and 1B from the "*portable* dictation recording device" of Fig. 2, which is silent as to the size of the device. *Id.* at col. 1, ll. 61-65; col. 2, ll. 8-9 (emphasis added). *See also id.* at col. 1, ll. 30-33; Declaration of Dr. John M. Strawn, ¶ 17, (filed concurrently herewith as Def.'s Exh. 24) ("Strawn Decl.").

While the "hand held" device from the Fig. 1 embodiment is indeed "portable," nothing in the specification or the claims *restricts* the term "portable" to the Fig. 1 embodiment. *See* Strawn Decl. ¶ 15; *see also Halliburton Energy Servs.*, *Inc*. *v. M-I LLC*, 514 F.3d 1244, 1250-51 (Fed. Cir. 2008) (declining to read a "preferred embodiment" into the claims where nothing in the specification "require[s]" the embodiment's features). Nor does the ordinary meaning of the term "portable" support

Voice Domain's construction. The term "portable" means "[c]apable of being carried by hand or on the person; capable of being moved from place to place." Def.'s Exh. 18; Strawn Decl. ¶ 16. Thus, the plain meaning of "portable voice recording device" is "a voice recording device that is capable of being moved from place to place."

Moreover, dependent Claim 3 of the '566 patent recites "a chassis *having a size and shape which allows said chassis to fit in a user's hand*." Def.'s Exh. 2 at col. 6, ll. 19-22. This language from Claim 3 is taken almost verbatim from the section of the specification that Voice Domain cites to support its construction. The Federal Circuit has recognized that a limiting construction is improper where a dependent claim contains the features that allegedly limit the independent claim. *See Saunders Group, Inc. v. Comfortrac, Inc.*, 492 F.3d 1326, 1331 (Fed. Cir. 2007) (finding that the presence of a dependent claim reciting a "pressure activated seal" indicated that the independent claim "encompasses cylinders without pressure activated seals."). Voice Domain's construction would violate this principle.

Voice Domain's rewriting of the claims with select features from the specification should be rejected. Should the Court wish to construe the term, PENAC believes that it should be construed consistent with its plain meaning: "a voice recording device that is capable of being moved from place to place."

B.    **Voice Domain's Construction of "Output Port Controller" (Claims 1 and 4) Conflicts with the Intrinsic Record, Overlaps with Other Claim Language, and Relies on Incompetent Extrinsic Evidence**

Voice Domain's bloated construction of this term, including "hardware and/or software that . . . is capable of transferring a file . . . (Pl.'s Mem. 7-8), not only lacks

support from the intrinsic record, but strengthens the conclusion that the term invokes § 112, ¶ 6.    *See* Defendant's Opening Brief in Support of Its Proposed Claim Constructions 19-22; Strawn Decl. ¶¶ 18-21.

First, the term "file" implies a "named collection of data" that "has certain attributes, including access permissions and type."  Def.'s Exh. 19; Strawn Decl. ¶ 19. Unsurprisingly, Voice Domain cites no support for its attempt to insert this term into the claims, for the word "file" appears *nowhere* in the '566 patent.  In the embodiment of Fig. 2, voice recordings are saved *in analog form* (i.e., a form that is not readable by a computer) on a magnetic tape cassette 30.  Def.'s Exh. 2 at col. 2, ll. 35-36.  Such an implementation belies any attempt to restrict the claims to the transfer of "file[s]." Instead, the specification of the '566 patent refers to the transfer of "signals."  *Id*. at col. 1, ll. 40-47.  Strawn Decl. ¶ 20.

Voice Domain's proposed construction is also redundant of other language used in the claims.  Voice Domain proposes that the "output port controller" means "hardware and/or software . . . capable of transferring a file . . . from the device's memory to a voice processing computer."  Yet, Claim 1 already recites that the "output port controller" is used to "transmit[] said memory signal to a voice processing computer device . . . ." Def.'s Exh. 2 at col. 6, ll. 11-12.  Thus, Voice Domain's construction merely restates that the output port controller is capable of performing the recited function of the output port controller, and would only confuse the jury.

Voice Domain's construction further verifies that the term "output port controller" invokes § 112, ¶ 6, for Voice Domain itself can conjure no structure *in the claims* that

performs the claimed functions of the "output port controller."  Rather than identify any definite structure, Voice Domain refers broadly to "*hardware and/or software.*"  In the context of an electrical device, "hardware and/or software" encompasses the entire universe of structure capable of performing the recited function.  Everything in an electronic device must be either "software" or "hardware."  There is no third category.  By seeking to cover all possible structure for performing the recited function, Voice Domain's confirms that the term "output port controller" denotes no definite structure.  Strawn Decl. ¶ 21.  If Voice Domain wishes the claim to be construed broadly to cover structure for performing the recited function, it must invoke § 112, ¶ 6, as it clearly has.  Thus, the term must be "construed to cover the corresponding structure, material, or acts *described in the specification and equivalents thereof.*"  35 U.S.C. § 112, ¶ 6.

Nor does the other "evidence" cited by Voice Domain weigh against application of § 112, ¶ 6, to this term.  Voice Domain resorts to the specification of the '566 patent to identify the structure corresponding to the "output port controller."  Pl.'s Mem. 8.  Yet, this is precisely the analysis called for under § 112, ¶ 6, to determine structure for a claim term *that itself denotes no definite structure*.  *B. Braun Med*., *Inc*., *v. Abbott Labs*., 124 F.3d 1419, 1424 (Fed. Cir. 1997).

Further, the "[t]echnical dictionary definitions" Voice Domain cites to support its construction were published in 2009—*fifteen years* after the application for the '566 patent was filed.  Thus, these references are not competent evidence of how the disputed terms would have been construed by one of ordinary skill *at the time of the alleged*

*invention.*[2]  The only source Voice Domain cites that is contemporaneous with the filing

of the '566 patent provides a definition for an unrelated "automatic controller," rather

than the term "output port controller," or even the base term "controller."

### C. Voice Domain's Construction of "Voice Processing Computer" (Claim 1) is both Unnecessary and Untenable

Nothing in the specification or claims limits the term "voice processing" to

"analyzing a voice input (such as speech recognition) and/or modifying the voice input."

Pl.'s Mem. 10.  Yet, Voice Domain (again) seeks to confine the term "voice processing

computer" to devices capable of carrying out functions selected from an embodiment

disclosed in the specification.  This *ex post* claim revision should be rejected.

Even if it were proper to import limitations during construction, there is no support

in the specification for Voice Domain's construction.  The specification describes the

claimed computer as "typically connected to the output port 24 *to receive and store the*

*transmission.*"  Def.'s Exh. 2 at col. 2, ll. 32-34.  In this general description of the

computer, there is no *requirement* that the computer be capable of "analyzing a voice

input (such as speech recognition) and/or modifying the voice input."  Strawn Decl. ¶¶

22-24.  The portion of the specification Voice Domain cites to support its construction

---

[2] *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1315 (Fed. Cir. 2003), *cert. denied*, 540 U.S. 982 (2003) ("[T]he best indicator of claim meaning is its usage in context as understood by one of skill in the art *at the time of invention.*") (emphasis added); *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1299 (Fed. Cir. 2003) (refusing to consider extrinsic materials published between seven and ten years after the filing date of the asserted patent); *Eli Lilly and Co. v. Teva Pharmaceuticals USA, Inc.*, 2008 WL 2410420, *3 (S.D. Ind. June 11, 2008) (criticizing use of extrinsic evidence published 10 years after the patent's filing date).

merely describes "[o]ne object of the invention," where "the output signal is rapidly transmitted to a speech recognition device . . . ."  Def.'s Exh. 2 at col. 1, ll. 29-32.  If Voice Domain wanted to limit its claims as it now proposes, it could have explicitly claimed a "speech recognition device," as recited in Claim 2 of the '883 patent.  Instead, it choose to more broadly claim a "voice processing computer."

PENAC believes that the term "voice processing computer" needs no construction. Should the court decide that a construction is necessary, the term should be construed consistent with its plain meaning:  "a computer capable of processing voice signals."

## IV.    The '800 Patent

### A.    Voice Domain's Construction of "Portable Voice Storage Peripheral" (Claim 1) Lacks Support from the Specification and Conflicts with Other Claims

As with Voice Domain's proposed construction of "portable voice recording device" from the '566 patent, Voice Domain cites one embodiment that describes a "handheld input peripheral," and seeks to import its features into the claims.  Yet, the '800 patent does not use the terms "handheld" and "portable" synonymously, and nothing *requires* the claimed "portable voice storage peripheral" be "capable of being *carried by the user while recording and storing* voice recordings."  Strawn Decl. ¶¶ 26-29.  If Voice Domain wanted the claims of the '800 patent to be limited to peripherals capable of performing these functions *while being carried*, it could have written its claims to say so. As written, the broad term "portable" does *not* require this capability.

Claim 2 of the '800 patent recites "a chassis, having a handle portion shaped to fit in a user's hand, . . . [whereby] . . . the user [can] *operate said position transducer with*

*said finger while holding said microphone near the user's mouth*." Voice Domain's limiting construction thus conflicts with the principle that independent claims are not as limited as their dependent claims. *Saunders Group*, 492 F.3d at 1331.

Moreover, nothing in the '800 patent limits the claimed "peripheral" to a "computer peripheral." Strawn Decl. ¶ 30. Rather, the specification broadly discloses that "[t]he peripheral can be designed to operate a plurality of different devices . . . . (e.g., computer, interactive television, video game, telephone etc.)." Def.'s Exh. 3 at col. 6, ll. 35-36; *see also id.* at col. 2, ll. 34-39. This broad use of the term "peripheral" is consistent with contemporaneous technical definitions of the term. Def.'s Exh. 20 (defining "peripheral" broadly as "a device, attached to a host via a communication link").

**B.** **Voice Domain's Constructions of "Position Transducer" and "Position Signal" (Claim 1) Conflict with the Intrinsic Record**

According to Voice Domain, the term "position transducer" from Claim 1 of the '800 patent refers to "a user input device such as a switch, set of switches, trackball or joystick" that performs two functions in two functional modes. Pl.'s Mem. 11. To sustain its position that the claimed "position transducer" may consist of a "switch" or "set of switches," Voice Domain points to the disclosure of "pointer device 14 (such as a trackball or joystick); [and] a pair of buttons 16, 18 (e.g., electromechanical switches, membrane switches or any other similar type of transducer known to those skilled in the art)." Def.'s Exh. 3 at col. 2, ll. 20-23. The specification makes it plain, however, that the claimed "position transducer" refers to the "pointer device 14" and not to "buttons 16,

18." For example, the specification explains how the "pointer 14" may be used to "mov[e] a cursor 26 [along] bar graph 22 . . . ." *Id.* at col. 2, ll. 52-55. The user may select a desired location to record with the pointer 14, *and then press buttons 16 and 18 to record. Id.* at col. 3, ll. 1-8. Nothing in the specification links buttons 16 and 18 to the "position transducer." Nor does the dictionary definition Voice Domain cites-which again postdates the filing date of the '800 patent by eight years-mention a "switch."

Moreover, by resorting to the specification of the '800 to identify the structural components that comprise the "position transducer," Voice Domain essentially admits that the term is devoid of structure and must be construed under § 112, ¶ 6. A "transducer" is something that "transduces," i.e., something that "convert[s] variations in (a medium) into corresponding variations in another medium." Def.'s Exh. 15 (defining "transduce," "transducer"). For example, a microphone transduces sound into an electrical signal and a button transduces a user's touch into an electrical signal. Without reference to the claimed function of the transducer, one of ordinary skill would not associate the term "transducer" with any definite structure. Strawn Decl. at ¶¶ 31-32.

Voice Domain's reference to U.S. Patent No. 3,976,899 (filed Dec. 23, 1974) ("the '899 patent"), owned by U.S. Philips Corp., only undercuts its attempt to ignore § 112, ¶ 6. The '899 patent nowhere contains the term "position transducer," and thus it is irrelevant to the construction of the claims at issue in this case. Further, '899 patent clearly does not invoke § 112, ¶ 6, because *the claim itself* recites the structure that

performs the function.[3]   Voice Domain's purely functional recitation of "a position transducer for providing a position signal in response to a user's actuation" fails to indicate any such structure.  Strawn Decl. ¶¶ 31-32.  Thus, this term should be construed under § 112, ¶ 6.

### C.    Voice Domain's Construction of "Controller" (Claim 1) is Unsupported by the Intrinsic and Extrinsic Records

Voice Domain argues that the "controller" "is a structure," and thus should not be construed under § 112, ¶ 6.  Pl.'s Mem. 14.  Rather than suggest any definite structure that the "controller" may comprise, however, Voice Domain's proposed construction again generically refers to all "[h]ardware and/or [s]oftware" combinations capable of "implementing the *functions* performed by the device."  Pl.'s Mem. 14 (emphasis added).  This construction confirms that the claimed "controller" is devoid of definite structure.  Strawn Decl. ¶¶ 33-34.

Voice Domain attempts to support its construction with citations to the specification of the '800 patent and the same non-contemporaneous dictionaries it presented for the '566 patent.  *Id*.  By resorting to the specification to locate the structure not found in the term "controller," Voice Domain again essentially concedes the absence of structure in the claim itself.  Thus this term should be construed under § 112, ¶ 6.

---

[3] Claim 1 of the '899 patent recites a "mechanical-electrical transducer comprising a *monostable snap action spring* . . . and a *piezoelectric element*."  Pl.'s Exh. 13A at col. 10, ll. 14-19.  Such language "recites structure sufficient to perform the claimed function in its entirety" (*Biomedino, LLC, v. Waters Techs. Corp*., 490 F.3d 946, 950 (Fed. Cir. 2007), *cert. denied*, 128 S. Ct. 653 (2007)), and does not invoke § 112, ¶ 6.

**D.    Voice Domain's Construction of "Remote Voice Processing System" (Claim 1) Finds No Support from the Specification**

PENAC believes that this term is readily understandable by a lay jury, and thus needs no construction.  In any case, there is no basis for Voice Domain to restrict the meaning of "remote voice processing system" to require that it be "*capable of analyzing a voice input (such as for speech recognition) and/or modifying the voice input*."  Pl.'s Mem. 15.  Voice Domain provides no support for this construction, other than linking its construction to the term "voice processing computer" from the '566 patent; it cites no evidence intrinsic to the '800 patent.

Indeed, the intrinsic record provides no support for Voice Domain's construction. The "capab[ility] of analyzing a voice input (such as for speech recognition) and/or modifying the voice input" is not recited in Claim 1, and nothing from the specification of the '800 patent requires reading these capabilities into the claim.  As the specification explains, "[t]he invention relates generally to data entry into a computer, particularly computers having the *ability to store* and/*or* process voice data."  Def.'s Exh. 3 at col. 1, ll. 19-21 (emphasis added).  Elsewhere, the specification confirms that recorded voice signals can be transmitted to the generic "computer 34" in the "local mode."  *Id*. at col. 3, ll. 13-24.  "The computer can use the microphone signal for a variety of purposes.  For example, *if* the computer includes speech recognition software, it may analyze the stored" voice signals.  *Id*. at col. 3, ll. 36-38 (emphasis added).

The specification also mentions "[a]dditional [e]mbodiments" of the invention, in which "[t]he peripheral can … operate a plurality of different devices . . . (e.g., computer,

interactive television, video game, telephone[,] etc.)." *Id*. at col. 6, ll. 35-39. These portions of the specification show that Voice Domain intended the claimed "remote voice processing device" to include an array of different devices, *with or without* the "capab[ility] of analyzing a voice input (such as for speech recognition) and/or modifying the voice input." While the claimed "remote voice processing device" may well *encompass* the "capab[ilities]" Voice Domain now focuses on, nothing from the intrinsic record requires *limiting* the claimed "remote voice processing device" to these capabilities. Strawn Decl. ¶¶ 35-38.

> **E.    Voice Domain's Constructions of "Command Button" and "Command Notification Signal" (Claims 6 and 8) Ignore the Intrinsic Record and Add New Claims Language Out of Whole Cloth**

Voice Domain brazenly argues that "command" does not mean "command," but instead means "command *or instruction*." Pl.'s Mem. 15 (emphasis added). Although this is perhaps what Voice Domain in retrospect wishes it had claimed, it did not do so. Voice Domain essentially proposes that, whatever the term "command" means, it should be construed to mean more than "command." Such a construction cannot be adopted.

First, the construction is illogical. By suggesting that the term "command" refer not only to "commands," but to "a command *or instruction*," the upshot is that the term "command" means everything that the term "command" means—plus more. Such illogical constructions are rarely correct. *See Telemac Cellular Corp.*, 247 F.3d at 1324 (restating that constructions that contradict the claim language are disfavored). Voice Domain's X = X + Y argument is illogical, circular (because it still does not define "command"), and would only confuse the jury.

In addition, Voice Domain's construction contradicts the specification of the '800 patent, which clearly describes how a "command" indicates an operation to be executed by the computer, rather than a recorded request to, e.g., a human typist or transcriptionist, as the term "instruction" is used in the dictation arts. Strawn Decl. ¶¶ 40, 43. For example, U.S. Patent No. 4,574,320 discloses a dictation machine having an instruction switch that causes "an instruction signal" to be placed on the tape when the user wishes to record "instructions intended for the typist and the like." Def.'s Exh. 21 at col. 1, l. 50; Strawn Decl. ¶ 41. "[W]hen the instruction signal was reproduced . . . the typist listened to the instruction that followed, and typed the message which followed the instructions in accordance with the instructions. Def.'s Exh. 21 at col. 1, ll. 52-56. As another example, U.S. Patent No. 4,858,213 discloses an "instruction switch" that is used to distinguish a "special note" or "instruction" to the transcriptionist, from the portion of the recording that is to be transcribed into the final document. Def.'s Exh. 22 at col. 1, l. 47-53; Strawn Decl. ¶ 42. Thus, as used in the art, "instructions" refer to human-to-*human*, rather than human-to-*computer* communications.

Moreover, the specification of the '800 patent explains that voice commands are spoken "to a computer" and "executed by the computer." For example, the user may "*assert*[] *the voice command button* 18 and speak[] the word "mark" into the microphone. [T]he peripheral [then] transmits a voice command signal . . . *to notify the computer* that the microphone signal represents a *spoken command*. *The computer therefore examines the microphone signal* to identify the spoken command 'mark'." Def.'s Exh. 3 at col. 4, ll. 1-8. By omitting the requirement that the command be given "to a computer" and

14

"executed by the computer," Voice Domain's construction attempts to divorce itself from the specification and cannot be adopted.  Strawn Decl. ¶¶ 39, 43.

F.    **Voice Domain's Constructions of "Record Button" and "Data Notification Signal" (Claims 5 and 7) are Redundant and Unnecessary**

The terms "record button" and "data notification signals" from claims 5 and 7 of the '800 patent need no construction, as evidenced by the fact that Voice Domain's proposed constructions for these terms largely repeat language already present in claims 5 and 7.  For example, claims 5 and 7 recite "a record button" used "for providing a data notification signal indicating whether said record button is asserted . . . ."  Def.'s Exh. 3 at col. 7, ll. 34-36.  Voice Domain proposes to construe the term "data notification signal" as "the output generated when the record button is asserted . . . ."  Pl.'s Mem. 16-17.  These constructions would result in redundant claim terms and would not aid the jury.

G.    **Voice Domain's Construction of "Spoken Commands (Claims 6 and 8) Reads Out Claim Language and Disregards the Intrinsic Record**

According to Voice Domain, the term "spoken commands" should be construed, if at all, to mean "[s]peech input into the microphone after the command button has been actuated."  Pl.'s Mem. 17.  With this construction, Voice Domain asks this Court to do nothing less than read the term "command" out of claims 6 and 8.

As the Federal Circuit has instructed, the meaning of claim terms cannot be ignored.  *See Pause Tech*., *LLC v. TiVo*, *Inc*., 419 F.3d 1326, 1331 (Fed. Cir. 2005) (counseling against disregarding some claim terms in favor of others).  By asserting that "spoken commands" may include any type of "*speech* input into the microphone after the

command button has been actuated," rather than "*commands*" that are "spoken" as recited in claims 6 and 8, Voice Domain again defies the plain language of its claims. Under Voice Domain's proposed construction, "speech" would constitute a "spoken command" whether it is a "command" or not. A non-"command" would become a "spoken command" as long as the "command button has been actuated." This construction eviscerates the meaning of the word "command," and must be rejected.

Nor does the specification support Voice Domain's construction. According to the specification, "the computer may analyze [microphone signal] samples to determine if the voice includes *spoken commands to be executed by the computer*." Def.'s Exh. 3 at col. 3, ll. 42-44 (emphasis added). The specification provides the example of spoken commands used to manipulate text on a display screen. *Id*. at col. 3, l. 66 - col. 4, l. 26 (describing "mark," "cut," and "paste" commands).

Thus, in contrast to any "speech input into the microphone after the command button has been actuated," a spoken command refers to speech used to initiate an operation by the computer. Strawn Decl. ¶¶ 44-47. Voice Domain's contrary construction entirely lacks support from the specification of the '800 patent.

## V. The '883 Patent

### A. Voice Domain's Construction of "Handheld Peripheral" (Claim 1) Contradicts the Specification

Referring to its construction of the term "peripheral" from the '800 patent, Voice Domain construes the term "handheld peripheral" in the claims of the '883 patent as "a

device which provides communication or inputs into the computer" that is "capable of being held in a [single] hand." Pl.'s Mem. 11, 18. This narrow construction is untenable.

While the drawings Voice Domain points to (Figures 1 and 3) may well depict a "handheld" device within the meaning the claim preambles, the specification contains nothing *limiting* the claims to peripherals operable "with a single hand." Strawn Decl. ¶¶ 49-50. In fact, the specification indicates that a user may employ both hands while using the device. *See* Def.'s Exh. 4 at col. 3, ll. 51-53 (noting that "the user need not release the device and move his *hands* to another input device to perform the described functions."); Strawn Decl. ¶ 51. Voice Domain's narrowing construction of the term "handheld peripheral" is thus not supported by the specification and should be rejected.

### B. Voice Domain's Construction of "Voice Command Button" (Claim 1) is Illogical and Contrary to the Intrinsic Record

Just as with its proposed construction of the term "command button" from the '800 patent, Voice Domain's proposed construction of the term "voice command button" from Claim 1 of the '883 patent contravenes bedrock principles of claim construction.

Voice Domain again seeks to construe the term "command" to mean "command *or instruction*." Pl.'s Mem. 18. As discussed above with regard to the '800 patent, construing the term "command" to encompass "command *or instruction*" would necessarily result in a contradiction between the term "command" as used in the claims and as used in Voice Domain's proposed construction. This would be both completely illogical and highly confusing for a jury tasked with applying the claim language. Strawn. Decl. ¶¶ 52-54.

Further, the specification of the '883 patent-like the specification of the '800 patent-consistently describes the "voice command button" as used to distinguish speech that indicates an operation to be executed by the processing system from speech that is merely recorded. Strawn Decl. ¶ 54. Here again, the specification plainly explains that a "voice command" is a command "to a computer." Def.'s Exh. 4 at col. 1, ll. 42-43. The voice command button "allow[s] a user to *dictate commands rather than actuating buttons representative of these commands*." *Id*. at col. 3, ll. 54-56 (emphasis added).

Moreover, the prosecution of the '883 patent further confirms that the term "voice command button" was understood by both Voice Domain and the Examiner as referring to human-to-computer "commands" rather than some form of recorded "instructions," e.g., to a typist or transcriptionist. For example, in response to a rejection of its claims, Voice Domain explained that "the voice command button [is used] to notify the system that subsequent voice input should be interpreted as *spoken command*(s), *not simply as dictation*." Def.'s Exh. 6 at V00236 (emphasis added). And, in a subsequent Appeal Brief, Voice Domain discussed how a user may close a file by "simply assert[ing] the voice command button . . . and *speak*[ing] *the command* '*close file and save*.' Because the command button was asserted, *the computer responds by closing the file . . . .*" Def.'s Exh. 7 at V00329 (emphasis added).

Despite these explanations from the intrinsic record that consistently describe a "voice command" as a substitute for buttons mapped to particular commands, Voice Domain seeks to add the alternative language "*or instruction*" onto "command." Voice Domain can point to nothing from the intrinsic record to support this construction.

Additionally, Voice Domain's proposed construction improperly attempts to recapture the claim scope it forfeited during prosecution of the '883 patent.  During prosecution, Voice Domain cancelled claims reciting a "voice command *transducer*" and replaced them with new claims reciting a "voice command *button*."[4]  Voice Domain argued that the new terms distinguished its invention over the cited prior art,[5] and thereby surrendered claim scope formerly encompassed by the broader term "transducer." Because Voice Domain's proposed construction refers to "a user actuated *device*" (including, e.g., sliding switches, dials, and other actuators), rather than a type of *button*, it improperly seeks to recover claim scope that it gave up.[6]

For all of these reasons, Voice Domain's construction should not be adopted.

### C.    Voice Domain's Construction of "Command Notification Signal" (Claim 1) is Redundant and Unnecessary

Voice Domain's proposed construction of the term "command notification signal" is both unnecessary for the jury's understanding and repetitive of other claim language. Claim 1 recites "a command notification signal indicating whether said voice command button is asserted."  Def.'s Exh. 4 at col. 4, ll. 30-32.  Voice Domain proposes that the term "command notification signal" be construed as "the signal indicating that the voice

---

[4] Def.'s Exh. 23 at V00277.

[5] *Id*. at V00281 (arguing that the prior art "does not teach providing both voice data input and voice command input in system wherein voice and record buttons promptly notify the system whether the voice should be treated as command or data . . . .").

[6] *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 733–34 (2002) (holding that narrowing amendments made during prosecution may estop a patentee from asserting the subject matter surrendered by the amendments).

command button has been actuated." Pl.'s Mem. 19. A jury would not be aided by this redundant construction, and it should not be adopted by the Court.

### D. Voice Domain's Construction of "Voice Data Button" (Claim 1) is Unnecessary and Improperly Seeks to Reclaim Forfeited Claim Scope

Voice Domain proposes that the term "voice data button" from Claim 1 of the '883 patent means "[a] user actuated device, which when actuated by the user, emits an output indicating that the voice input is data to be recorded." Pl.'s Mem. 20.

Because this construction impermissibly broadens the scope of Claim 1 to include not only "voice data *buttons*," as claimed, but various types of "user actuated *devices*" (including, e.g., sliding switches, dials, and other actuators) that Voice Domain forfeited during prosecution, it cannot be adopted. Just as Voice Domain surrendered subject matter related to its claimed "voice command *button*" during prosecution, Voice Domain gave up subject matter relating to its claimed "voice data *button*."[7]

### E. Voice Domain's Construction of "Data Notification Signal" (Claim 1) is Redundant and Unnecessary

Claim 1 of the '883 patent recites a "data notification signal indicating whether said voice data button is asserted." Def.'s Exh. 4 at col. 4, ll. 33-35. Voice Domain proposes to construe the term "data notification signal" to mean "the signal indicating

---

[7] In its December 8, 1994 Second Preliminary Amendment, Voice Domain cancelled pending Claim 18 which recited a "record *transducer*" and added new Claim 28 in its place, which recited a "record *button*. Def.'s Exh. 23 at V00277 (emphasis added). Voice Domain argued that the prior art "d[id] not teach or suggest the claimed voice and record buttons which promptly instruct the processing system how to process the voice input, as specified in claims 28-30." *Id.* at V00282.

that the data button has been activated."[8]  Such a redundant construction would only confuse the jury, rather than help the it understand and apply the claim language.  As such, it should not be adopted.

### F.    Voice Domain's Construction of "Cursor Position Transducer" (Claim 1) is Unsupported by the Intrinsic Record

Similar to its proposed construction of the term "position transducer" from the '800 patent, Voice Domain's proposed construction of the term "cursor position transducer" from Claim 1 of the '883 patent improperly attempts to broaden the term by associating it with elements of the specification that do not pertain to it.

Voice Domain argues that the term "cursor position transducer" means "a user input device such as a switch, set of switches, trackball or joystick which provides a signal for controlling the cursor position on the display screen."  Pl.'s Mem. 21.  To support this construction Voice Domain cites col. 2, ll. 28-37 of the '883 patent, which describes a "track ball 16" as one type of cursor position transducer, and "well known cursor control keys" as another type.  Elsewhere in the specification, "buttons 18-26" are described, which may consist of "electromechanical" or "membrane" switches.  Def.'s Exh. 4 at col. 2, ll. 6-8.  Nothing in the specification links these "switches" to the claimed "cursor position transducer."  The "cursor position transducer" is consistently described

---

[8] Voice Domain's March 31, 2009 Statement of Claim Terms for Construction and Proposed Construction uses the term "actuated" rather than "activated," which it uses in its opening brief.  Def.'s Exh. 17 at 3.  Thus, if Voice Domain's construction were adopted, the jury would have to apply the claim term "asserted," while being told that the term means "actuated" or "activated."  Such a construction would leave the jury needlessly splitting hairs and confused as to the true meaning of the term.

as the trackball 16, "well known cursor control keys," or an equivalent using spoken commands. *Id.* at col. 3, ll. 1-10, 22-23; col. 4, ll. 15-18. Thus, Voice Domain's attempt to read the terms "switch" and "set of switches" into the construction of the term "cursor position transducer" is at odds with the specification. Strawn Decl. ¶¶ 55-56.

Nor does Voice Domain show § 112, ¶ 6, to be inapplicable. As discussed above, the dictionary Voice Domain cites to support its position was published nearly a decade after the filing date of the '883 patent, and it still defines the term "transducer" in terms of its function, not its structure. Pl.'s Exh. 12. Further, the '899 patent for a "mechanical-electrical transducer" that Voice Domain cites nowhere mentions a "cursor position transducer." Thus, neither the intrinsic nor the extrinsic records support Voice Domain's construction of the "cursor position transducer," and it should be rejected.

### G. Voice Domain's Construction of "Coupling Mechanism for Providing Said Microphone Signal, Said Command Notification Signal, Said Data Notification Signal, and the Cursor Signal to Said Processing System" (Claim 1) Verifies that § 112, ¶ 6, Applies

Voice Domain's proposed construction of "coupling mechanism" misconstrues the law of § 112, ¶ 6, as well as the claim itself. Voice Domain argues that the term denotes sufficiently definite structure in the "context of the electrical peripheral device." Pl.'s Mem. 22. However, as the Federal Circuit has recognized, "generic terms [like] 'mechanism,' . . . typically do not connote sufficiently definite structure," even in context. *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006).

Further, the test for application of § 112, ¶ 6, does not turn on the supposed "context" of the claim. Instead, the test is whether the claim language denotes

sufficiently definite structure for performing the claimed function. Indeed, in the case Voice Domain principally relies on, *Greenberg*, the term "detent mechanism" was found to escape treatment under § 112, ¶ 6, *not* because of the particular "context" of the claim, but because *the claim language itself* recited definite structure for performing the claimed function.[9]

By contrast, the modifier "coupling" in Claim 1 is not associated with a similarly definite form of structure. Strawn Decl. ¶¶ 57-58. Rather, as PENAC has shown, the term "coupling" merely describes the function of "[j]oining in couples, paring; linking." 3 OED at 1050 (Def.'s Exh. 10). Unlike in *Greenberg*, therefore, the term "coupling mechanism" is a placeholder for "anything" that performs the claimed function of "providing said microphone signal, said command notification signal, said data notification signal, and said cursor signal to said processing system." Def.'s Exh. 4 at col. 4, ll. 39-42; Strawn Decl. ¶ 58. Consequently, this term should be construed under § 112, ¶ 6.

## H.    Voice Domain's Construction of "Microphone Interpretation Mechanism" (Claim 1) Supports Applying § 112, ¶ 6

Voice Domain's construction of the term "microphone interpretation mechanism" also confirms that the term is a means-plus-function element. Voice Domain suggests that the term "microphone interpretation mechanism" means "[*s*]*oftware and/or*

---

[9] Specifically, in *Greenberg*, the modifier, "detent," was known in the art to refer to "a catch, pawl, dog, or click . . . that locks or unlocks a movement." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996) (citation omitted).

*hardware* . . . that recognizes when the data button or command button has been actuated."[10]  Far from identifying definite structure, Voice Domain's construction leaves one skilled in the art to search the entire universe of possible structures for performing the recited function.

Voice Domain's proposed construction seeks to add a structural gloss to the functional language of the claim in an effort to circumvent § 112, ¶ 6.  In doing so, however, it deliberately misconstrues the claimed function.  Voice Domain proposes that the claimed "microphone interpretation mechanism" "recognize whether the voice data *button* or the voice command *button* is asserted."  Pl.'s Mem. 22.  The function of the microphone interpretation mechanism recited in Claim 1, however, is to "determine[] when *said microphone signal* represents command and when it represents data."  Thus, Voice Domain would construe the "microphone interpretation mechanism" to "interpret" the output of buttons, rather than the "microphone signal" as claimed.  This misconstrues the plain language of the function recited in the claim.  And, because Voice Domain fails to identify definite structure to perform the function of the "microphone interpretation mechanism," the structure must be determined under § 112, ¶ 6.  Strawn Decl. ¶¶ 59-60.

## I.     Voice Domain's Construction of "Speech Recognition Mechanism" (Claim 2) Further Supports Applying § 112, ¶ 6

Similar to the term "microphone interpretation mechanism," the term "speech recognition mechanism" from Claim 2 of the '883 patent is drafted in entirely functional

---

[10] Def.'s Exh. 17 at 3 (emphasis added).

language.  Voice Domain provides no evidence to support its assertion that this recitation denotes sufficient structure to render § 112, ¶ 6, inapplicable.

In fact, Voice Domain's proposed construction of the "speech recognition mechanism" again suggests that the term means "*hardware and/or software*" for performing the claimed function of "analyz[ing] a voice input and generat[ing] text representative of the words contained in the voice input."  Pl.'s Mem. 23.  Referring to the entire universe of "hardware *and/or* software" combinations fails to indicate sufficiently definite structure to one skilled in the art.  To understand the claim language, one skilled in the art would have to look to the specification to determine what structure Voice Domain disclosed to perform the claimed function-in short, to perform the analysis required under § 112, ¶ 6.

## VI.    CONCLUSION

For reasons explained above, PENAC requests that the Court reject Voice Domain's unsupported constructions and adopt PENAC's proposed constructions.

| */s/ John A. Kenney* | */s/ Frank. A Decosta, III* |
|---|---|
| John A. Kenney | Frank A. DeCosta, III |
| Charles L. McLawhorn | Elizabeth A. Niemeyer |
| McAfee & Taft, a Professional Corporation | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP |
| 10th Floor, Two Leadership Square | 901 New York Avenue, NW |
| 211 North Robinson | Washington, DC 20001-4413 |
| Oklahoma City, OK 73102-7103 | frank.decosta@finnegan.com |
| john.kenney@mcafeetaft.com | elizabeth.niemeyer@finnegan.com |
| chad.mclawhorn@mcafeetaft.com | |
| | John Mulcahy |
| | Elliot C. Cook |
| | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP |
| | Two Freedom Square |
| | 11955 Freedom Drive |
| | Reston, VA 20190 |
| | john.mulcahy@finnegan.com |
| | elliot.cook@finnegan.com |

**Attorneys for Defendant Philips Electronics North America Corporation**

Dated: April 30, 2009

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

Henry A. Meyer, III
Bar Number: 6163
MEYER, CAVE & LEONARD PLLC
Suite 207
116 East Sheridan Avenue
Oklahoma City, OK 73104
E-mail Address for Service:
hameyer@meyercave.com

Alan M. Fisch (*admitted pro hac vice*)
KAYE SCHOLER LLP
901 Fifteenth Street N.W.
Washington, DC 20005-2327
afisch@kayescholer.com

Richard G. Greco (*admitted pro hac vice*)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
rgreco@kayescholer.com

***ATTORNEYS FOR VOICE DOMAIN TECHNOLOGIES LLC***

*s/ John A. Kenney*
John A. Kenney