# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VOICE DOMAIN TECHNOLOGIES, LLC, ) | |
| ) | |
| Plaintiff, ) | CASE NO. CIV-08-701-HE |
| ) | |
| v. ) | |
| ) | |
| PHILIPS ELECTRONICS NORTH AMERICA ) | |
| CORPORATION, OLYMPUS AMERICA INC., ) | |
| and OLYMPUS IMAGING AMERICA INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT
## OF ITS CLAIM CONSTRUCTION

Henry A. Meyer, III
MEYER, CAVE & LEONARD PLLC
Suite 207
116 East Sheridan Avenue
Oklahoma City, OK 73104
(405) 702-9900

Alan M. Fisch
KAYE SCHOLER LLP
901 Fifteenth Street N.W.
Washington, DC 20005-2327
(202) 682-3500

Richard G. Greco
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8500

*Attorneys for Voice Domain Technologies LLC*

31824516.DOC

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

I. THE SPECIFICATIONS OF THE '566 AND '800 PATENTS DEFINE "PORTABLE VOICE RECORDER" TO MEAN A DEVICE THAT CAN BE USED WHILE CARRIED. .............................................................................................. 1

II. "CONTROLLER" OR "OUTPUT PORT CONTROLLERS" ARE STRUCTURES. .................................................................................................................. 2

III. PLAINTIFF'S CONSTRUCTION OF VOICE PROCESSING COMPUTER OR SYSTEM IS CONSISTENT WITH THE ORDINARY MEANING OF PROCESSING ................................................................................................................... 5

IV. DEFENDANT HAS FAILED TO CARRY ITS BURDEN OF PROOF TO SHOW THAT THE TERM "TRANSDUCER" IS NOT A STRUCTURE ....................... 6

V. THE VOICE COMMAND BUTTON SIGNALS THAT MICROPHONE INPUT SHOULD BE TREATED AS A COMMAND ................................................................. 7

VI. HANDHELD PERIPHERAL IS ONE THAT IS CAPABLE OF BEING HELD IN A SINGLE HAND ........................................................................................................ 9

VII. COUPLING MECHANISM AND MICROPHONE INTERPRETATION MECHANISM ................................................................................................................. 10

# TABLE OF AUTHORITIES

## CASES

*Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361 (Fed. Cir. 2007) .................................. 2

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002) ......................................... 3

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374 (Fed. Cir. 2006) ..................... 1

*Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354 (Fed. Cir. 2004) ....................... 3

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ......................................................... 1, 3, 5

*SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351 (Fed. Cir. 2006) ..................................... 2

I.      **THE SPECIFICATIONS OF THE '566 AND '800 PATENTS DEFINE "PORTABLE VOICE RECORDER" TO MEAN A DEVICE THAT CAN BE USED WHILE CARRIED.**

The patent specifications of the '566 and '800 patents make clear that the claimed device is one which is "portable" in the sense that it can be carried and used by an individual.

Defendant defines the word "portable" in isolation from the specification to mean any device that is transportable, including large structures that are capable of being moved and plugged into an outlet, but which could not be carried while being used.

The defendant's construction violates the fundamental principle of reading the claim terms in light of the specification of the patents. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005). The '566 and '800 patent specifications include drawings and illustrations of devices, all of which are small devices capable of being carried in a person's hand. Nothing in either specification or prosecution history suggests that the device is the type of structure that, while capable of being physically moved, could not be used while being carried.

Indeed, one purpose of the '800 patent invention was to create a dual-mode device which could be used in a portable mode, and then later attached to a voice processing system to be used in a local mode. Since the average desktop computer used in the local mode of operation of the invention is "movable", the patent is clearly referring to a more narrow definition of "portable" when it describes a portable mode.

Defendant misapplies the doctrine of claim differentiation to support its definition of "portable." The doctrine of claim differentiation provides that where limitations have been added to a dependent claim, but are not limitations of the independent claim, the independent claim should not be construed as inherently including the dependent claim limitation so as to render the dependent claim superfluous. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438

F.3d 1374, 1380 (Fed. Cir. 2006)("reading an additional limitation from a dependent claim into an independent claim would not only make that additional limitation superfluous, it might render the dependent claim invalid."); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1369 (Fed. Cir. 2007).

Contrary to defendant's claim differentiation argument, the construction of "portable voice recording device" as one that can be carried by the user while recording does not render Claim 3 of the '566 patent superfluous. Claim 3 contains a new limitation stating: "a chassis having a size and shape which allows said chassis to fit in a user's hand, wherein said microphone, said memory device and said output port controller and said loudspeaker are all housed within said chassis." Claim 3 has a limitation requiring a loudspeaker, and claim 1 does not. That difference alone would make the claims of different scope, and not superfluous, no matter how one construes "portable voice recorder." *See SRAM Corp. v. AD-II Engineering, Inc.*, 465 F.3d 1351 (Fed. Cir. 2006); *Andersen*, 474 F.2d at 1370. Moreover, a portable device that is small enough to carry while recording need not have components, such as the microphone within a chassis as required by claim 3. For example, the microphone could be a plug-in type.

## II. "CONTROLLERS" OR "OUTPUT PORT CONTROLLERS" ARE STRUCTURES.

The defendant attempts to support its "means-plus-function" construction of the term "output port controller" in the '566 patent and the term "controller" in the '800 patent by assertions from its expert witness which are legally irrelevant. Defendant relies on the declaration of Dr. Strawn, stating that the term "output port controller" and "controller" could have "referred to numerous electrical components at the time of the invention. As such, the term itself would have suggested no definite form of structure to one of ordinary skill." (Strawn Dec., ¶ 21, 34).

These statements do not assist defendant's effort to prove that the terms are in means-plus-function format, because the law is clear that a claim term need not refer to any single definite structure in order to avoid § 112 ¶ 6, but may use a general term that encompasses many different kinds of structures. *See Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1359 (Fed. Cir. 2004) ("[W]e have not required the claim term to denote a specific structure."); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1370 (Fed. Cir. 2002)(a term "need not connote a precise physical structure in order to avoid the ambit of [§ 112 ¶ 6]." Dr. Strawn's declaration furthermore confirms that the claim terms do refer to structure, "electrical components."

References, both long before the filing of the patents in suit and contemporary ones, show that controllers are known structures in the computer art. (*See* previously submitted Exhibits 18, 19, and 20, all filed in the 1980s.)

Defendant complains that plaintiff "resorts to the specification" to define output port controller and contends that by referring to the specification, plaintiff is applying § 112 ¶ 6 to identify a structure to perform a function. (Def. Br. p. 6)  This is a fundamental error.  All claim terms, not merely those written as "means-plus-function" are construed in light of the specification and prosecution history, the intrinsic evidence, and one must always consider the specification when construing a claim term. *Phillips*, 415 F.3d at 1313-14.

In both its brief (Def. Br. p. 5) and Dr. Strawn's declaration (Strawn Dec., ¶ 20), defendant argues that the '566 patent includes an embodiment that has a magnetic tape recorder as a storage means and stores information in analog form.  From that premise, it argues that the output port controller cannot be defined as rapidly downloading a "file."  The premise is wrong.

Defendant has confused a common method of storing digital signals on tape with an analog signal.  The '566 patent (Ex. 1) col. 2, line 66 to col. 3 line 3, explains that "the microphone provides an electrical representation m(t) of the user's voice to an analog to digital converter A/D.  A/D digitizes the microphone signal at a sampling rate SR to produce a digitized signal d(k)."  In order to record digital signal on magnetic tape, the digital signal is then processed through a modulator.  (Col. 3, lines 4 -11).  When the recording is played back, the tape is processed through a demodulator, and then downloaded through the output port as a digital signal.  This is explained in column 4, lines 21-38, which states, in part:  "As explained above, the demodulator converts the tape signal into digital samples d(k)."  (*See also* '566 patent Fig. 2).  In addition, the patent also includes an embodiment using a digital memory storage device, which is plainly entirely digital. (Col. 4, ll. 57-60). Accordingly, the defendant's position that the claim device has only analog signals that cannot be downloaded to a computer is simply wrong.

Defendant's further argument that an analog recording cannot be a "file" is thus moot. Moreover, the *IEEE* dictionary definition of "file" cited by defendant does not contradict plaintiff's use of the term "file" in its proposed construction.  Defendant's definition includes: "(1) (computers).  A collection of related records treated as a unit. . . . (3) (information transfer), one named collection of data."  The word file is an ordinary term to refer to a unit of dictation, but in any case the dispute is a red herring. Removing the word file from the plaintiff's proposed construction of "output port controller" so that it reads:  "hardware and/or software that operates as an interface between the device's memory and the device's output port which is capable of transferring a  voice recording from the device's memory to a voice processing computer" changes nothing of substance.

### III. PLAINTIFF'S CONSTRUCTION OF VOICE PROCESSING COMPUTER OR SYSTEM IS CONSISTENT WITH THE ORDINARY MEANING OF PROCESSING.

The plaintiff's construction of "voice processing computer" is consistent with the ordinary meaning of the words in the claim.

Defendant apparently contends that capability for storage and playback of the voice recording is sufficient to satisfy the limitation for voice processing, but the specification of the '800 patent shows that it is not. The '800 patent specification makes a distinction between "storing" and "processing," but claims only the latter. The '800 patent states: "the invention relates generally to data entry into a computer, particularly computers having the ability to store and/or process voice data." (Ex. 2, Col. 1, lines 19-21) Clearly, "storing" as used in the patent is distinguished from "processing."

The term "processing" has an ordinary meaning. For example, in a closely analogous situation the term "Word Processor" would be understood to refer to common programs capable of manipulating and editing written text. *Random House Unabridged Dictionary* 2d Ed. (1993) (Ex. 25) defines "word processing" as "writing, editing and production of documents . . .through the use of a computer program or complete computer system designed to facilitate rapid and efficient manipulation of text." The Voice Processing computer in this dictation art similarly refers to a computer that can edit or manipulate the voice input. Other definitions of "processing" support plaintiff's position. In *Webster's New World Computer Dictionary*, 10th Ed. (Ex. 26), processing is defined as "the execution of program instructions by the computer's central processing unit (CPU) that in some way transforms data, such as sorting and selecting some of it according to specified criteria, or performing mathematical computations on it." In the Merriam-Webster on line dictionary, one definition of processing is "(3): to subject to examination or analysis <computers process data>". (Ex. 27). If storage were all that was required of the

computer, to which the claimed device is linked, the words "voice processing" would be unnecessary.

Defendant seeks to include within the claims devices that are clearly not voice processing computers. For example, it argues that conventional television sets would fall within the claim term, because television sets are mentioned in the specification. (Def. Br. 12-13) It is, however, black letter law that the claims, not the specification, define what is claimed as the invention. *Phillips*, 415 F.3d at 1312. The claims of the patents-in-suit focused on a narrower embodiment than the specification supports by requiring a "voice processing" computer or system, rather than any device that could receive voice signals.

## IV.   DEFENDANT HAS FAILED TO CARRY ITS BURDEN OF PROOF TO SHOW THAT THE TERM "TRANSDUCER" IS NOT A STRUCTURE.

The terms "position transducer" and "cursor position transducer", in the '800 and '883 patents respectively, refer to structure, and are not terms in the "means-plus-function" format.

Defendant again makes the irrelevant point in its declaration that the term "transducer" does not refer to one particular structure. (Strawn Dec., ¶ 32) As the above cited cases make clear (p. 3 *supra*)(*see also* Plts. Response Br. pp. 2-3), claim terms need not refer to a specific structure to avoid being treated as §112 ¶ 6. There are many different forms of transducers which can be used to control the position in the recording or position on a computer display.

Defendant seeks to limit the position transducer of the '883 patent to the specific example of the pointer device in the specification, but the claim terms are not so limited. The term "transducer" includes a multitude of different types of devices which convert user input into electrical energy, such as microphones, buttons, trackballs, joysticks and the like as exemplified in the patent specification. (Ex. 2, '800 patent, col. 2, lines 17-23). There is nothing in the claim

language, prosecution history, or specification which narrows the term "transducer" to one particular type of transducer for designating position.

## V. THE VOICE COMMAND BUTTON SIGNALS THAT MICROPHONE INPUT SHOULD BE TREATED AS A COMMAND.

Plaintiff defined the term "voice command button" as: "A user actuated device which, when activated by a user, emits an output which indicates that the voice input is a command or instruction." This construction reflects the function of the voice command button to allow the user to indicate how his microphone input is to be treated, without the need for either the computer system or other recipient to determine the treatment from the content of the speech.

Defendant first complains that the word "instruction" is not in the claim term, but definitions necessarily use words other than the words one is trying to define. As shown by numerous dictionaries, a common definition and synonym of the word "command" is the word "instruction." Neither the word instruction nor the word command has a unique meaning of either human-to-computer communication or human-to-human communication, as defendant contends, because both words are used in both contexts.

*Webster's 9th New Collegiate Dictionary* (Ex. 28) lists as a synonym for "command" the word "instruct." That dictionary lists one definition of the word "instruction" as "a code that tells a computer to perform a particular operation." *Webster's 3rd New International Dictionary*, page 455 (Ex. 29), defines "command" to include as a synonym the word "instruction." It goes on to say "in the meaning of issuing commands or orders, these words are often interchangeable." That same dictionary defines the word "instruction" to include "to give an order or command." *Random House Unabridged Dictionary* 2d Ed. (Ex. 25) includes a definition of command as "a character, symbol, or item of information for instructing a

computer." That same dictionary defines "instruction" as "a command given to a computer to carry out a particular operation."

Moreover, the file history of the '883 patent plainly shows that human-to-human communication with aid of the command button was intended. In the file history of the '883 patent, in an Amendment mailed September 8, 1994, the applicant explained: "The purpose of the voice command transducer is not simply *to allow the user to engage in a conversation (although in some of embodiments, it may contribute to this function)*, it is to distinguish a voice command from other types of voice input. (Ex. 17 at V00230) Plainly, one does not converse with a computer.

Neither the '800 patent nor the '883 patent claims have any limitation regarding how a command is implemented once given by the user. While the specification certainly has examples of a speech recognition computer executing spoken commands directly, the *claims* are not so limited.

Moreover, the defendant contradicts the doctrine it has misapplied in another context, that of claim differentiation, when it seeks to impose a speech recognition requirement on the independent Claim 1 of the '883 patent. Dependent Claim 2 of the patent specifies "speech recognition" as *the only* additional limitation to Claim 1. Accordingly, Claim 2 would be rendered superfluous if "speech recognition" were already an inherent requirement of every claim.

The function of the voice command button in the '883 patent (or the command button in the '800 patent) is to give a signal to indicate that what is spoken following activation of that button is a command, and not dictation to be added to the data. The file history of the '883 patent makes this clear. In the Amendment mailed September 8, 1994 (quoted above), the

applicant states "the voice command transducer notifies the system that the voice input is to be treated as a spoken command, to distinguish other types of voice input, *e.g.*, data input to be stored." (Ex. 17 at V00237) Throughout the prosecution history, in fact, it is made clear that the voice data and voice command buttons notify the system whether the voice input is to be treated as a command or whether it is to be treated as data. (*See e.g.* Ex. 17 at V00269; V00271; V00337).

The defendant's construction of "voice command" in isolation from the full phrase "voice command button" contradicts the way the specification and file history describe how the device works. The defendant's construction provides that the content of the speech, not the activation of the voice command button, distinguishes commands from data. That is not how the device works, and to the contrary, the function of the "voice command button" and "voice data button" eliminates the necessity of interpreting the content of the speech to determine whether it should be added to the dictation or treated as a command.

## VI.  HANDHELD PERIPHERAL IS ONE THAT IS CAPABLE OF BEING HELD IN A SINGLE HAND.

The specification of the '883 patent, including the drawings and the description of the device, make clear that the peripheral is one that can be operated by a single hand.

Defendant points to one sentence in the specification, which it misinterprets, to argue the contrary. The '883 specification, in describing how the peripheral allows the user to perform a number of functions without switching to another device, states:

> Accordingly, the user can dictate text into the computer, move the cursor on the computer's display screen and manipulate the text, all with the same handheld device. Thus, the user need not release the device and move his hands to another input device to perform the above described functions. (Ex. 3, col. 3, lines 49-53)

The plural word "hands" is used in this context as referring *to the device to which one might* have to switch if the peripheral could not perform all the functions that the invention does.

For example, if using a microphone input device that did not have the features of the invention, the user might need to move to a keyboard to perform a function, which could involve more than one hand.  The invention eliminates the need for that transition.

## VII. COUPLING MECHANISM AND MICROPHONE INTERPRETATION MECHANISM

Once again the defendant's evidence on the terms "coupling mechanism" and "microphone interpretation mechanism" are legally irrelevant to the question of whether those terms are means-plus-function elements.  The declaration submitted by defendant states merely that these terms do not refer to a "specific" structures.  (Strawn Dec., ¶¶ 58, 60).  As noted already (p. 3, *supra.*), the law is clear that a claim term need not refer to a specific structure in order to avoid the means-plus-function interpretation.

## CONCLUSION

Plaintiff's claim constructions should be adopted.

Dated:  May 11, 2009

                               Henry A. Meyer, III
                               MEYER, CAVE & LEONARD PLLC
                               Suite 207
                               116 East Sheridan Avenue
                               Oklahoma City, OK 73104
                               (405) 702-9900

Alan M. Fisch
KAYE SCHOLER LLP
901 Fifteenth Street N.W.
Washington, DC 20005-2327
(202) 682-3500

Richard G. Greco
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8500

By: /s/ Richard G. Greco

*Attorneys for Voice Domain Technologies LLC*