**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| Voice Domain Technologies, LLC, | ) |
|  | ) |
| Plaintiff, | ) Case No. CIV-08-701-HE |
|  | ) |
| v. | ) |
|  | ) |
| Philips Electronics North America Corporation, | ) |
|  | ) |
| Defendant. | ) |

**DEFENDANT PHILIPS ELECTRONICS NORTH AMERICA CORPORATION'S
REPLY BRIEF IN SUPPORT OF ITS PROPOSED CLAIM CONSTRUCTIONS**

# TABLE OF CONTENTS

I. Introduction ................................................................................................................. 1

II. The "Microphone Interpretation Mechanism" Limitation ('883 Patent, Claim 1) Clearly Invokes § 112, ¶ 6, Whatever the "Context" ............................... 1

III. The Terms "Coupling Mechanism" ('883 Patent, Claim 1) and "Speech Recognition Mechanism" ('883 Patent, Claim 2) Likewise Invoke § 112, ¶ 6 ................................................................................................................................ 3

IV. The "Structure" Voice Domain Identifies as an "Output Port Controller" ('566 Patent, Claims 1 and 4) Does Not Perform the Claimed Function ................. 4

V. The "Controller Having a Portable Mode and a Local Mode of Operation" Limitation ('800 Patent, Claim 1) Must be Construed Under § 112, ¶ 6 ................. 6

VI. "Position Transducer for Providing a Position Signal in Response to a User's Actuation of Said Position Transducer" ('800 Patent, Claim 1) is Devoid of Definite Structure and Must be Construed Under § 112, ¶ 6 ................... 6

VII. "Cursor Position Transducer for Providing a Cursor Signal Representative of a Desired Cursor Position on a Display Screen of Said Processing System" ('883 Patent, Claim 1) Denotes No Definite Structure, and Must be Construed Under § 112, ¶ 6 .................................................................................. 8

VIII. "Voice Command[s]" ('883 Patent, Claim 1) and "Spoken Commands" ('800 Patent, Claims 6 and 8) Are Commands to a Computer, and There Is No Basis to Expand These Terms to Cover Subject Matter Not Contemplated by Voice Domain at the Time of Filing .......................................... 8

IX. Conclusion ............................................................................................................... 10

# TABLE OF AUTHORITIES

## Cases

*Greenberg v. Ethicon Endo-Surgery, Inc.*,
  91 F.3d 1580 (Fed. Cir. 1996)..................................................................................1-2, 6-7

*Lighting World, Inc. v. Birchwood Lighting, Inc.*,
  382 F.3d 1354 (Fed. Cir. 2004)...........................................................................................6-7

*Linear Tech. Corp. v. Impala Linear Corp.*,
  379 F.3d 1311 (Fed. Cir. 2004)...........................................................................................1-2

*Mass. Inst. of Tech. v. Abacus Software*,
  462 F.3d 1344 (Fed. Cir. 2006)...........................................................................................2-3

*Nilssen v. Motorola, Inc.*,
  80 F. Supp. 2d 921 (N.D. Ill. 2000)....................................................................................5-6

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
  442 F.3d 1331 (Fed. Cir. 2006), *cert. denied* 549 U.S. 1054 (2006).............................9

*Personalized Media Commc'ns, LLC v. Int'l Trade Comm'n*,
  161 F.3d 696 (Fed. Cir. 1998).............................................................................................6-7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) (en banc), *cert. denied* 546 U.S. 1170 (2006).............9

*TriMed, Inc. v. Stryker Corp.*,
  514 F.3d 1256 (Fed. Cir. 2008), *cert. denied* 129 S. Ct. 144 (2008).........................5-6

*Welker Bearing Co. v. PHD, Inc.*,
  550 F.3d 1090 (Fed. Cir. 2008)..............................................................................................2

## Statutes

35 U.S.C. § 112 ..................................................................................................................*passim*

I.  **Introduction**

Voice Domain correctly notes that "[t]he drafter of patent claims may choose the form" in which the claims are drafted (Pl.'s Resp. Br. 1).  Having once made the choice during prosecution before the USPTO, however, Voice Domain cannot make a different choice before this Court.  In its response, Voice Domain's looks everywhere to find support for its proposed constructions, but the seemingly random patents and post-dated dictionaries it cites fall flat.  PENAC, by contrast, relies on the patent claims, specifications, prosecution histories, and appropriate extrinsic evidence to show the meaning of the disputed terms at the time Voice Domain filed its patent applications.

Voice Domain tries to dodge controlling precedent because the cases construe "different terms in the context of different technologies."  Pl.'s Resp. Br. 2.  Given that, *e.g.*, the '883 patent is the only patent that PENAC has located in the USPTO's database to use the phrase "microphone interpretation mechanism," however, this Court will be the first to have the opportunity to construe the precise terms at issue here.  *See* Supplemental Declaration of John M. Strawn, Ph.D. (Def.'s Exh. 27) ¶¶ 7-8.  Regardless of the precise terms, the principles of claim construction remain the same.  PENAC's constructions follow these principles, and should be adopted by this Court.

II. **The "Microphone Interpretation Mechanism" Limitation ('883 Patent, Claim 1) Clearly Invokes § 112, ¶ 6, Whatever the "Context"**

Voice Domain asserts that § 112, ¶ 6, does not apply to the term "microphone interpretation mechanism" because of the particular "context" and area of "technology" at issue here.  Pl.'s Resp. Br. 14-15 (citing *Linear Tech. Corp. v. Impala Linear Corp.*, 379 F.3d 1311 (Fed. Cir. 2004) and *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d

1

1580 (Fed. Cir. 1996)). In addition to misconstruing the claim term, however, Voice Domain misconstrues the Federal Circuit's holdings in *Linear Tech*. and *Greenberg*.

In *Linear Tech*. the Federal Circuit found that the term "circuit" "plainly" denoted structure to the skilled artisan. 379 F.3d at 1320. Because the structural term "circuit" was further "coupled with" a recitation of the "circuit's operation in sufficient detail," it found that the claim terms denoted sufficiently definite structure. *Id*. However, Voice Domain chose to use the term "mechanism" rather than "circuit," and the Federal Circuit has repeatedly found that "mechanism" is equivalent to "means" for purposes of § 112, ¶ 6. *See Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008) ("[The term] 'mechanism' is 'simply a nonce word or a verbal construct . . . .'" similar to the term "means."); *Mass. Inst. of Tech. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) (finding that the terms "'mechanism,' 'means,' 'element,' and 'device[,]' typically do not connote sufficiently definite structure" to fall outside of § 112, ¶ 6).

In *Greenberg*, the term "*detent* mechanism" was found not to invoke § 112, ¶ 6, because the term "detent" *alone* denoted sufficiently definite structure to one skilled in the art. 91 F.3d at 1583 ("Dictionary definitions make clear that the noun 'detent' denotes a type of device with a generally understood meaning in the mechanical arts . . . ."). That predicate is missing here, as Voice Domain has presented no evidence that the unique term "microphone interpretation" suggests definite structure to one skilled in the art. *See* Def.'s Op. Br. 13-14. The term is clearly functional. Def.'s Exh. 24 (Strawn Decl.) ¶¶ 59-60. By contrast, the term "microphone for providing a microphone signal representative of a user's voice," which is also used in Claim 1 of the '883 patent,

2

is clearly structural despite the fact that it explicitly recites the function of "providing a microphone signal." Def.'s Exh. 27 ¶ 9. Thus, § 112, ¶ 6, does not apply to this term.

Moreover, Voice Domain's theory that "mechanism" connotes structure in the electrical arts (Pl.'s Resp. Br. 14) is not reflected in the case law. In *Mass. Inst. of Tech.*, for example, the Federal Circuit construed the term "colorant selection mechanism for receiving said modified appearance signals and for selecting corresponding reproduction signals," under § 112, ¶ 6. 462 F.3d at 1354. The corresponding structure was found to be an electronic module. *Id.* at 1355. Thus, the generic term "mechanism," by itself, denotes no definite structure, whatever the technological field, and the functional term "microphone interpretation mechanism" must be construed under § 112, ¶ 6.

**III.  The Terms "Coupling Mechanism" ('883 Patent, Claim 1) and "Speech Recognition Mechanism" ('883 Patent, Claim 2) Likewise Invoke § 112, ¶ 6**

Similar to the term "microphone interpretation mechanism," these claim terms also contain the "nonce word" "mechanism," qualified only by a bare recitation of the function of the mechanism: "coupling" and "speech recognition." Voice Domain cites to the patent specifications to determine the structure corresponding to these functions and relies on arbitrarily selected extrinsic evidence. Pl.'s Resp. Br. 17-18. Yet, if one of ordinary skill must resort to the specification in order to determine the corresponding structure, as Voice Domain appears to concede by relying on the specifications to make its arguments, the terms themselves clearly do not connote definite structure, and § 112, ¶ 6, applies. *See Mass. Inst. of Tech.*, 462 F.3d at 1354 (holding that where one skilled in the art would discern no definite structure in the claim term, the claim term is to be

3

construed under § 112, ¶ 6). Moreover, the extrinsic evidence Voice Domain cites fails to support its positions. For the "coupling mechanism" of the '800 patent, it cites an unrelated patent (Pl.'s Exh. 21) that uses the term "electrical coupling element," rather than "coupling mechanism." Voice Domain essentially argues that the "coupling" and "speech recognition" limitations describe functions implemented by any imaginable "mechanism" (Pl.'s Resp. Br. 17-18). These recitations are clearly governed by § 112, ¶ 6. *See* Def.'s Exh. 24 ¶¶ 57-58. Contrary to Voice Domain's argument (Pl.'s Resp. Br. 18), PENAC's construction does not limit "speech recognition mechanism" to the "particular version" of software disclosed in the '883 patent specification. It also includes "equivalents thereof." 35 U.S.C. § 112, ¶ 6.

**IV.    The "Structure" Voice Domain Identifies as an "Output Port Controller" ('566 Patent, Claims 1 and 4) Does Not Perform the Claimed Function**

Voice Domain asserts that "[t]he output port controller is a structure shown on the circuit diagram of the device [disclosed in the '566 patent], and is a common computer term referencing a known structure that is described in dictionaries and technical publications." Pl.'s Resp. Br. 3. In its Responsive Brief, however, Voice Domain admits that "[l]ike any single component, *the output port controller works in connection with the other components of the device to perform its function*."). Pl.'s Resp. Br. 6.[1] Thus, by Voice Domain's own admission, neither the "serial port controller" shown in the

---

[1] Significantly, Voice Domain has not argued that PENAC's construction correctly identifies the structure that performs the function. *See* Strawn Supp. Decl. ¶ 9.

drawings of the '566 patent, nor the known "controllers" described in the various patents, post-dated dictionaries and technical publications Voice Domain cites (Pl.'s Exhs. 4-6, 8, 9, and 18-20), perform the *entirety* of the claimed function of the "output port controller." Thus, even under Voice Domain's construction, the term "output port controller" does not recite sufficient structure to perform the claimed function. Def.'s Exh. 24 ¶ 21; Def.'s Exh. 27 ¶ 10.

Far from having "no bearing on whether the output port controller refers to structure" (Pl.'s Resp. Br. 6), Voice Domain's admission that the "thing" it identifies as an "output port controller" is, by itself, insufficient to perform the recited function *effectively rebuts the presumption* that the recitation does not invoke § 112, ¶ 6, based on absence of the phrase "means for." *Nilssen v. Motorola, Inc.*, 80 F. Supp. 2d 921, 934 (N.D. Ill. 2000) (construing "power conditioning circuit" pursuant to § 112, ¶ 6, because "the disclosed structural elements—the inverter and rectifier alone—do not suffice 'to perform *entirely* the recited function.'") (citation omitted) (emphasis in original); *see also TriMed, Inc. v. Stryker Corp.*, 514 F.3d 1256, 1259 (Fed. Cir. 2008) (restating that sufficiency of structure may be shown if the structure is capable of "performing the described functions *in their entirety* . . . .") (emphasis added).

Voice Domain omits the fact that it was the claimed *function*—"transmitting said memory signal to a voice processing computer device at a rate substantially more rapid than the rate at which said electrical signal was generated"—and not the mere presence of some generic "controller" (which was already recited in the rejected claims) that Voice Domain used to convince the USPTO that its claims were allowable over the prior art

5

then of record. Def.'s Exh. 5 at V00905-V00907. The functional limitation that was used to secure allowance of the claims from the USPTO invokes § 112, ¶ 6, both because it does not denote sufficiently definite structure, and because the "corresponding" structure Voice Domain identifies cannot "perform entirely the recited function[s]."

V.   **The "Controller Having a Portable Mode and a Local Mode of Operation" Limitation ('800 Patent, Claim 1) Must be Construed Under § 112, ¶ 6**

As with the functional "output port controller" recitation from the '566 patent, Voice Domain has not disputed that the "controller" recitation from the '800 patent is incapable of performing the entirety of the function associated with it in the claim language. Pl.'s Resp. Br. 6-7; *see also* Def.'s Exh. 24 ¶¶ 33-34. Because the claim itself does not indicate the structure for performing the recited functions of "stor[ing]" and "provid[ing]" signals "to a remote voice processing system for controlling said processing system," § 112, ¶ 6, must be applied to determine that structure. *Nilssen*, 80 F. Supp. 2d at 934; *see also TriMed*, 514 F.3d at 1259.

PENAC has identified the corresponding structure from the specification as output terminal 30, controller 60, CPU 62, memory 64 (including a stored program to be executed by CPU), decoder 66, status register 68, A/D 70, microphone register 72, serial port 82, and local/portable mode switch 84. Def.'s Exh. 16 at 5; Def.'s Exh. 27 ¶ 11. Voice Domain has not disputed this identification of structure.

VI.  **"Position Transducer for Providing a Position Signal in Response to a User's Actuation of Said Position Transducer" ('800 Patent, Claim 1) is Devoid of Definite Structure and Must be Construed Under § 112, ¶ 6**

Voice Domain cites *Greenberg*, *Personalized Media* and *Lighting World* for the proposition that claim terms are not necessarily governed by § 112, ¶ 6, simply because

6

they are "expressed in functional language." Pl.'s Resp. Br. 8. In *Greenberg*, however, the term "detent mechanism" was not construed under § 112, ¶ 6, because the skilled artisan would identify a "detent" with definite structure. *Greenberg*, 91 F.3d at 1583. In *Personalized Media*, "digital detector" was found to denote definite structure, "including a rectifier or demodulator." 161 F.3d 696, 704-05 (Fed. Cir. 1998). And in *Lighting World* the term "connector assembly" was known in the art as "a unit that joins, fastens, or links each pair of adjacent support members." 382 F.3d 1354, 1361 (Fed. Cir. 2004). In contrast to these structural terms, Voice Domain has not shown that the term "transducer" identifies any definite structure, and indeed it cannot. Def.'s Exh. 24 ¶¶ 31-32, 55-56. The missing structure must be determined in accordance with § 112, ¶ 6.

According to the technical dictionary Voice Domain cites for other claim terms, "transducer" is defined as "[a] *general term for any device* that converts energy from one form to another . . . ." Def.'s Exh. 25 at 546. This functional, nonstructural definition is consistent with the evidence PENAC has introduced regarding the ordinary meaning of the term. *See* Def.'s Resp. Br. at 24.

Voice Domain's reference to U.S. Patent No. 5,398,220 is a red herring. The portion of the '220 patent cited by Voice Domain describes a "[c]ontrol switch 20 [with] five positions labelled [sic] 'Play', 'FWD', 'REV', 'REC', and 'Stop'." Pl.'s Exh. 23 at col. 2, ll. 42-43. Voice Domain has not explained how these switches perform the claimed function of the "position transducer" recited in the '800 patent, i.e., "providing a position signal" that "identifie[s]" a location in the peripheral's memory. Voice Domain's flawed attempt to import structure ("switches") from the '220 patent further

7

underscores the lack of structure denoted by the term "position transducer." Accordingly, § 112, ¶ 6, must be applied to determine the structure.

VII. **"Cursor Position Transducer for Providing a Cursor Signal Representative of a Desired Cursor Position on a Display Screen of Said Processing System" ('883 Patent, Claim 1) Denotes No Definite Structure, and Must be Construed Under § 112, ¶ 6**

Similar to the term "position transducer" from the '800 patent, the term "cursor position transducer" fails to denote definite structure. Def.'s Exh. 25 at 546; Def.'s Exh. 24 ¶¶ 55-56. As discussed above, Voice Domain's own evidence indicates the lack of definite structure associated with the term "transducer." Thus, in order to determine any definite structure corresponding to the "cursor position transducer," one of ordinary must look to the specification and apply § 112, ¶ 6.

VIII. **"Voice Command[s]" ('883 Patent, Claim 1) and "Spoken Commands" ('800 Patent, Claims 6 and 8) Are Commands to a Computer, and There Is No Basis to Expand These Terms to Cover Subject Matter Not Contemplated by Voice Domain at the Time of Filing**

Voice Domain criticizes PENAC's construction of the term "voice command" for considering the term separate from the "button" with which it is associated. Voice Domain feigns confusion, complaining that PENAC's construction is "incoheren[t]." Pl.'s Resp. Br. 12. Yet, the focus of Voice Domain's construction, as well, is on the term "voice command" rather than the "button" with which it operates. If it wanted to claim a "button" apart from the type of input it received, Voice Domain could have done so. PENAC does not dispute that the "voice command button" is a "button," but simply recognizes that the term in need of construction is "voice command" rather than "button," which should be readily understood by a lay jury. Voice Domain evidently agrees.

8

Focusing on the "voice command" portion of the term, Voice Domain argues that the "voice command button" may signify not only commands to computers but "instructions" to "a [human] transcriber" as well. Pl.'s Br. 10. Nothing in the specification of the '883 patent supports this construction. Def.'s Exh. 24 ¶ 43. Voice Domain's attempt to divorce its claims from the specification must be rejected. "The claims must be read in light of the specification of which they are a part." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc); *see also On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1338 (Fed. Cir. 2006) ("[T]he scope and outer boundary of claims is set by the patentee's description of his invention.").

A "command" as used in the specification of the '883 patent is a command to a computer, while the term "instruction" as used in the dictation arts refers to human-to-human communications. Def.'s Exh. 24 ¶¶ 40-42. The one contemporaneous dictionary Voice Domain cites to support its other constructions defines "command" as "[a] signal that initiates a *predetermined type of computer operation which is defined by a[ computer] instruction*." Def.'s Exh. 26 at 102. Not surprisingly, Voice Domain fails to cite this definition with respect to its constructions of "voice command" and "spoken commands." Consistent with this definition, the definitions of other contemporaneous dictionaries, and the specifications of the asserted patents, PENAC proposes to construe the term "voice command" as "speech that indicates an operation executed by the processing system specified by the content of the speech." Def.'s Exh. 16 at 8.

By contrast, Voice Domain goes so far as to invent an example to support its construction, arguing that a "voice command *or instruction*" may signify, for instance,

9

"us[ing] Times New Roman type font." for dictated material. Pl.'s Resp. Br. 9. This example appears nowhere in the specification or prosecution history of the '883 patent. To support it, Voice Domain cites col. 3, ll. 60 to col. 4, ll. 11 of the '883 patent's specification. *Id*. This portion of the specification explains, however, that the "voice command button" is used "to transmit a voice command signal over cable 28 *to notify the computer* that the microphone signal represents a spoken command." Examples of such commands include the computer operations of "mark," "cut", "paste," and "cut/delete," but not for the transcriber to "us[e] Times New Roman type font" in the transcription.

Nor does Voice Domain's "claim differentiation" argument hold water. According to Voice Domain, Claim 2 of the '883 patent, which recites "a speech recognition mechanism which generates text data representative of a microphone signal . . ." is made "superfluous" by PENAC's construction of "voice command." Pl.'s Br. 11. Yet, Claim 2 is explicitly directed to the "signal designated as *data*," not "*command*." Further, neither the language of Claim 1 nor PENAC's construction require "generat[ing] *text data*," as recited in Claim 2. Def.'s Exh. 27 ¶ 12.

## IX.  Conclusion

For reasons explained above, and in its prior briefs, PENAC requests that the Court adopt its proposed constructions, and reject Voice Domain's constructions.

10

| | |
|---|---|
| */s/ John A. Kenney* | */s/ Frank A. DeCosta, III* |
| John A. Kenney<br>Charles L. McLawhorn<br>McAfee & Taft, a Professional Corporation<br>10th Floor, Two Leadership Square<br>211 North Robinson<br>Oklahoma City, OK 73102-7103<br>john.kenney@mcafeetaft.com<br>chad.mclawhorn@mcafeetaft.com | Frank A. DeCosta, III<br>Elizabeth A. Niemeyer<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>901 New York Avenue, NW<br>Washington, DC 20001-4413<br>frank.decosta@finnegan.com<br>elizabeth.niemeyer@finnegan.com |
| | */s/ John Mulcahy* |
| | John Mulcahy<br>Elliot C. Cook<br>Finnegan, Henderson, Farabow, Garrett & Dunner, LLP<br>Two Freedom Square<br>11955 Freedom Drive<br>Reston, VA 20190<br>john.mulcahy@finnegan.com<br>elliot.cook@finnegan.com |
| | **Attorneys for Defendant Philips Electronics North America Corporation** |

Dated:  May 11, 2009

# CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of May, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants:

>Henry A. Meyer, III
>Bar Number: 6163
>MEYER, CAVE & LEONARD PLLC
>Suite 207
>116 East Sheridan Avenue
>Oklahoma City, OK 73104
>E-mail Address for Service:
>hameyer@meyercave.com
>
>Alan M. Fisch (*admitted pro hac vice*)
>KAYE SCHOLER LLP
>901 Fifteenth Street N.W.
>Washington, DC 20005-2327
>afisch@kayescholer.com
>
>Richard G. Greco (*admitted pro hac vice*)
>KAYE SCHOLER LLP
>425 Park Avenue
>New York, NY 10022
>rgreco@kayescholer.com
>
>***ATTORNEYS FOR VOICE DOMAIN TECHNOLOGIES LLC***

        *s/ John A. Kenney*
        John A. Kenney